**UNITED STATES of America, Plaintiff,**

v.

**John William POWELL, Sylvia Campbell Powell, and Julian Schuman, Defendants.**

**No. 35065.**

United States District Court
N. D. California, S. D.

Feb. 3, 1959.

---

See also, D.C., 156 F.Supp. 526.

Robert H. Schnacke, U. S. Atty., James B. Schnake, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Charles R. Garry, Doris Brin Walker, San Francisco, Cal., A. L. Wirin, Los Angeles, Cal., for defendants.

GOODMAN, Chief Judge.

The indictment in this case charged the three defendants with conspiracy to violate the provisions of 18 U.S.C. § 2388,[1] and the defendant, John Powell, with substantive violations of the same statute. By its terms, § 2388 provides that it shall apply within the admiralty and maritime jurisdiction of the United States, and on the high seas, as well as within the United States.

During the trial, the United States offered the testimony of one Baylor, a United States soldier who was a prisoner of war in one of the Chinese communist prisoner-of-war camps during the Korean conflict, to show the distribution of the magazine "Chinese Monthly Review",

---

[1] "§ 2388. Activities affecting armed forces during war

"(a) Whoever, when the United States is at war, willfully makes or conveys false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies; or

"Whoever, when the United States is at war, willfully causes or attempts to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or willfully obstructs the recruiting or enlistment service of the United States, to the injury of the service or the United States, or attempts to do so—

"Shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"(b) If two or more persons conspire to violate subsection (a) of this section and one or more such persons do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be punished as provided in said subsection (a).

"(c) Whoever harbors or conceals any person who he knows, or has reasonable grounds to believe or suspect, has committed, or is about to commit, an offense under this section, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

"(d) This section shall apply within the admiralty and maritime jurisdiction of the United States, and on the high seas, as well as within the United States. June 25, 1948, c. 645, 62 Stat. 811."

published by defendants, among the United States prisoners of war, and also to show the effect of articles in the Review upon them. The Government stated that this evidence was proffered in proof of the intent of the defendants with respect to the offenses charged in the indictment, and as evidence of the tendency of the magazine as dangerous to the United States. At the time of the proffer of this evidence, the United States Attorney announced that other similar witnesses were in waiting to be called as Government witnesses. The defense objected to the proposed testimony on the ground that it was immaterial and inadmissible because of the provision of § 2388 which limits its application to the United States and its admiralty and maritime jurisdiction, and also because of the prejudicial and inflammatory nature of this evidence in creating an undue prejudice beyond its legitimate probative weight. Upon request of defense counsel, and because the Court deemed it in proper protection of the rights of the defendants, the Court ordered the argument on the objection to be held in the absence of the jury and excused the jury.

The argument was then had in the absence of the jury. Representatives of the press and other members of the public were present in the courtroom during the argument. In the course of the argument, the United States Attorney stated in effect that, in his opinion, the evidence objected to was admissible pursuant to the conspiracy count of the indictment, and since it established actual treason on the part of the defendants, it was admissible even though the overt act, with which the evidence was concerned, was committed outside the United States.

The Court stated that, while it was not passing on the merits of the matter, the evidence so far presented would be prima facie evidence of treason because the area of admissibility of evidence under the Treason Statute, 18 U.S.C. § 2381,[2] was much broader than under § 2388. The Court further stated, however, that since the defendants were not charged under the Treason Statute, in its opinion, the jurisdictional limitations of § 2388 required the Court to sustain the objection and exclude the proposed testimony, which it did. The trial of the case then proceeded before the jury. These proceedings occurred on January 29, 1959. The next day, Friday, January 30th, the defense tendered a motion for mis-trial upon the ground that the newspapers in the San Francisco area had published inflammatory articles and headlines indicating that the trial judge had declared the defendants guilty of treason. The motion was based upon an affidavit of one of the attorneys for the defense and accompanying it were copies of the newspaper articles and publications referred to. The United States Attorney stated in effect that the defense need not press the motion, that the Government had no desire to try the defendants in anything but the fairest atmosphere, and that the publications and headlines, relating to the Court's remarks upon the hearing had in the absence of the jury might have some tendency to effect some of the jurors, and that accordingly, the Government had no objection to the Court ordering a mis-trial. The Court thereupon granted the motion for mis-trial.

The record shows that counsel for the defense based the motion for mis-trial not upon any statements made by the Court but upon the newspaper publications and the prejudicial effect created by them.

There follows hereafter a brief statement as to the reasons and grounds upon which the order of mis-trial was based:

2. "§ 2381. Treason

"Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined not less than $10,000; and shall be incapable of holding any office under the United States. June 25, 1948, c. 645, 62 Stat. 807."

 Some newspaper headlines stated that the Judge declared the "Powells guilty of treason", and that "the Judge had flayed the Powells". Some of the newspaper accounts were written in such fashion as to indicate that the Judge had characterized the Powells as being guilty of treason. The record shows the falsity of such newspaper accounts. In the discussion between Court and counsel on the admissibility of the evidence, the record shows that the Court clearly stated that it was not indicating any opinion on the merits at all. Its reference to a prima facie showing of treason was, as the record shows, made solely to point out the gravely prejudicial effect of admitting evidence of treason in a case where no such charge was made. Consequently, the inaccuracy and prejudicial character of some of the newspaper accounts tended to violate the fundamental concept of fairness in a criminal proceeding. No act and no conduct of the Court or counsel on either side was cited as a basis for mis-trial. The motion was solely on the basis of the conduct of the press. It needs no argument to show that a defendant in a criminal case could not have a fair trial in the face of newspaper publications such as in this case.

There is a further and even stronger reason for the granting of a motion for mis-trial. Courts, particularly in criminal cases, are zealous in protecting the rights of a defendant against the possibility of the jury being influenced by non-evidentiary matters. Consequently, it has been traditional to excuse the jury, and to keep from their ears arguments on legal matters such as the admission of evidence. This we did in this case. Nevertheless, the press, in disregard of the worthy purpose above stated, published and disseminated that which the Court had kept from the ears of the jury. In this respect even those newspaper accounts which in whole or in part accurately reported the discussion between Court and counsel in the absence of the jury in respect to the admissibility of the proposed testimony created a danger of an improper and prejudicial influence upon the jury.

The constitutional right of freedom of the press is vital to the maintenance of our form of government. Without it there is a serious question as to whether we can maintain in our society our form of government. The doctrine of freedom of the press is not for the benefit of the press but for the benefit of the people. Newspaper publishers, therefore, have a high degree of responsibility to preserve the doctrine of freedom of the press for the benefit of the people, not for their own benefit.

The mis-trial ordered in this case may well point the way to a better understanding on the part of the press as to the importance of cooperation between press and court in the administration of justice. This Court would gladly participate in any effort to further that purpose.