[No. 38442.    Department One.    December 22, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK MORRIS, JR., *Defendant,* AMOS LEE MORRIS, *Appellant.**

*Reported in 422 P.2d 27.

*Opendack & Alfieri,* by *Henry P. Opendack* (Appointed counsel for appeal), for appellant.

*Charles O. Carroll* and *Edwin S. Stone,* for respondent.

HALE, J.—Never judge a book by its cover. April 6, 1965, Seattle police officers found a one-volume treatise on textiles entitled "America's Fabrics" by Bendure and Pfeiffer in an apartment they believed occupied by Mr. Amos Lee Morris, the appellant. Appellant said that he had seen the book, but had never read or examined it. He was thus unaware that pages 25 through 626 thereof had been cut out to form a rectangular compartment between its covers. Concealed in this cutout, the police found marijuana cigarettes, defined in law as a *narcotic* drug (RCW 69.33.220 (14)), and Obedrin and Seconal, classified as *dangerous* drugs (RCW 69.40.061), and accuse Morris of possessing both the book and the drugs.

Amos Lee Morris now appeals the judgment and sentence of 20 years' confinement imposed on count 1 for possession of narcotic drugs, the marijuana, and 6 months' confinement in the county jail (suspended) on count 2 for possession of the dangerous drugs, Obedrin and Seconal. Seattle police officers testified that, pursuant to a search warrant, they entered the apartment occupied by appellant at 1916 East Fir Street and, after a search of the bedroom, front room, dining room and kitchen, found the book containing the marijuana cigarettes, the Obedrin and the Seconal pills in a pantry joining the kitchen.

Appellant assigns error to the testimony of J. R., a 16-year-old girl, presented by the state to prove both appellant's occupancy of the premises and his possession of the narcotics and dangerous drugs. On direct examination in the state's case in chief, the girl testified that, during March, 1965, a month before she became 16, she had visited the apartment in which the book had been discovered; that she was in the apartment every day between March 16th and March 30th; that appellant Amos Morris and his brother, Frank Morris, lived there.

Following this sparse but elemental testimony, the state asked her no further questions and neither appellant nor his brother, a codefendant, cross-examined her. At the request of the state, she was ordered to remain in attendance.

After the state had rested its case in chief, appellant's brother, Frank Morris, testified on his own behalf that, although he had been at the apartment the night the officers searched it, he did not live there, but that appellant, his older brother, did. He said that, during the search, one of the officers handed him the book (exhibit No. 1) and asked him who owned it, and he had told the officers he did not know. He testified that he had never seen the book before, and so informed the officers at the time of the search. He said that he spent only one night in the apartment but had helped Amos move in. He had no knowledge of the girl J.R., he said, and had never seen her in the apartment.

Appellant, on his own behalf, testified that he had at one time lived in the apartment at 1916 East Fir; that during this period his brother Frank lived with him; that he had seen the book (exhibit No. 1) only in the possession of one T.E. who carried it around with him in the streets and in pool halls. Appellant said that, although he had paid the rent on the apartment, he had lived at his father's home until April 1, 1965. He testified he had been arrested and put in city jail April 5th, and was still in jail April 6th, the night the officers found the book in the apartment. He argued that such occupancy as was shown was insufficient to prove his possession of the book.

As to the book, appellant testified he had seen it in the apartment several times, brought there by and kept only in T.E.'s possession, but was unaware of its contents. He testified that he had never read it, examined it, handled it, or given it any attention. He indicated also that he had little interest in other people's reading habits and would not be inclined to nor had he ever, when seeing T.E. carrying the book, inquired as to its contents. Appellant showed complete indifference to the book and its contents except that he did recognize it as the one T.E. carried about and

brought to the apartment several times. Appellant denied that the young girl, J.R., had ever been in the apartment while he was there. He knew her only from seeing her several times on the street or "Just with the other girls, around cafes and places."

Then came the testimony which apparently is the basis for one of the assignments of error. The young girl J.R., of the white race, testified, when recalled by the state on rebuttal, that she had stayed all night at the apartment every night from March 16th to March 30th; that appellant Amos and his brother Frank occupied the apartment during that period; that Amos kept his clothing there; that she had first seen the book in the possession of one T.E. in the apartment, referring to the apartment as "Frank and Amos' house . . . on East Fir"; that T.E. had the book in his possession when he came in, and she saw Amos Morris handle the book; that Amos opened the book and she saw that its contents consisted of plastic containers filled with pills and capsules.

J.R. testified that she saw this book in that apartment at least three other times, that appellant Amos Morris was present in the apartment on each occasion, and that on each of these three latter occasions, she saw him open the book. Only once during these three occasions was she in a position to see the book's contents, and they were the same as she had earlier described when she had first observed Amos Lee Morris open it.

■ The certified statement of facts sets forth no objections to any of the foregoing testimony nor from the record can we find where appellant moved to strike it from the record or have the jury ordered to disregard it. The evidence thus stands in the record supplying cogent proof from which the jury could find appellant's possession of the apartment, the book, and ipso facto the marijuana and drugs. The assignment of error thus raises no points on review, for we can find no place in the record where the trial court had an opportunity to consider and rule upon these claimed errors. *State v. Johnson,* 69 Wn.2d 264,

418 P.2d 238 (1966); *State v. Miller,* 66 Wn.2d 535, 403 P.2d 884 (1965).

Appellant also assigns error to the testimony of J.R. on the further grounds that her presence in court as a witness for the state tended to prove him guilty of another crime, *i.e.,* contributing to the delinquency of a minor, and that, because she was of the white race and he and his brother of the Negro race, her testimony was unfairly prejudicial.

Appellant's arguments as to the witness's racial origin are without merit. Since the identity of the witness was not an issue, her racial origin and skin coloring were complete irrelevancies and the objection raised on that ground thus properly overruled. As to proof of other crimes, we see little merit there. That the evidence supplied by the young girl tended to prove appellant guilty of contributing to her delinquency gave the court no reason for excluding it if her testimony was material and relevant to the issues raised by the information or tended to prove any material fact in issue. On this point, we think that the rule expressed in *State v. Davis,* 6 Wn.2d 696, 108 P.2d 641 (1940), declares the law:

> In making its case, the state was entitled to introduce any evidence which was competent, relevant, and material to the issue to be determined by the jury. That a portion of the evidence so offered might incidentally tend to show that appellant had been guilty of some other and separate offense, is unimportant if the evidence tended to support the state's contention in the case being tried, and was admissible under the general rules of evidence. *State v. Thuna,* 59 Wash. 689, 109 Pac. 331, 111 Pac. 768; *State v. Macleod,* 78 Wash. 175, 138 Pac. 648.

We have never departed from the early statement in *State v. Gottfreedson,* 24 Wash. 398, 64 Pac. 523 (1901), reiterated in *State v. Davis, supra,* as follows:

> The general rule is well established that proof of the commission of a separate and distinct crime will not be admitted for the purpose of aiding the conviction of defendant for the crime charged. There are exceptions, however, to this general rule, as where the testimony shows a connection between the transaction under investigation and some other transaction, and where they

are so interwoven that the omission of the testimony in relation to the other crime would detract something from the testimony which the state would have a right to introduce as tending to show the commission of the crime charged by the defendant . . . .

Closely related in context is appellant's claim of error to the opening statement in which the prosecuting attorney said:

the State will present testimony from . . . [J.R.], a young lady that is sixteen years of age, that she spent some time at this particular apartment, in the company of both Mr. Amos Morris and Mr. Frank Morris, and that both of these men did in fact have possession of drugs and narcotics. As a matter of fact, they sold drugs and narcotics from this particular location to people who would come to the apartment for this purpose.

Appellant, because no sales were proved, asserts that the reference to *sales* of drugs and narcotics severely prejudiced him, and at the close of the state's case moved for a mistrial. The state presented no evidence of sales, but, instead, relied entirely on proof tending to show occupancy of the apartment and possession of the book and its contents.

Reference to the sale of drugs and narcotics in the opening statement alone presented no grounds for a mistrial, for proof of sales could well be relevant to the issue of possession. At the time the remark was made in the state's opening statement, both plaintiff and the appellant may well have assumed evidence of sales would be offered in proving possession. But after it became clear that the state would show no sales of drugs or narcotics, the record, nevertheless, shows no objection, exception, request for instructions to disregard the comment concerning sales, or any application whatever to the court by appellant for corrective action. Any objection to the statement was thus waived when appellant permitted the state to proceed with its entire case in chief before raising the comment as to sales in the opening statement as a ground for mistrial. As we said earlier, failure to allow the court timely opportunity to correct

whatever error was made constitutes a waiver of the objection.

Unless the misconduct of counsel in his opening statement is so flagrant, persistent and ill-intentioned, or the wrong inflicted thereby so obvious, and the prejudice resulting therefrom so marked and enduring, that corrective instructions or admonitions clearly could not neutralize their effect, any objection to such misconduct of counsel or error in the opening statement is waived by failure to make adequate timely objection and request for a corrective instruction or admonition. *Nelson v. Martinson,* 52 Wn.2d 684, 328 P.2d 703 (1958); *Jones v. Hogan,* 56 Wn.2d 23, 351 P. 2d 153 (1960).

Finally, appellant assigns error to instruction No. 6 reading:

> It is the law of the state of Washington that from mere possession of a narcotic drug the presumption arises that it is unlawful and that the lawfulness of the possession must be shown by the defendant.

Does this instruction, as appellant contends, put the defendant under an unreasonable and unfair burden of disproving one of the elements of a crime, and, thus, relieve the state of the burden of proving every element of the offense beyond a reasonable doubt?

Count 1 of the information charged appellant with possession of marijuana "without having any lawful order or prescription so to have." RCW 69.33.230 makes unauthorized possession of narcotic drugs unlawful, as follows:

> It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter.

Sections 69.33.240, *et seq.,* prescribe the conditions under which one may be deemed authorized to manufacture, sell, prescribe and buy narcotic drugs; RCW 69.33.390 places the burden of proving an *authorized* possession (meaning authorized by law) on the defendant once possession has been proved.

34

RCW 69.33.390 states:

> In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this chapter, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this chapter, and the burden of proof of any such exception, excuse, proviso, or exemption, shall be upon the defendant.

In *State v. Boggs,* 57 Wn.2d 484, 358, P.2d 124 (1961), we said that, once possession of a narcotic drug had been shown beyond a reasonable doubt, the burden was thereupon cast upon the defendant to present sufficient evidence to raise a reasonable doubt as to the unlawfulness of such possession. We there sustained an instruction to the jury which put the burden of showing a lawful possession on the defendant as follows:

> "If you find from the evidence beyond a reasonable doubt that the defendant was, on or about the 6th day of June, 1958, in King County, State of Washington, in possession of the narcotic drug described in the information herein, then I instruct you that unless you find evidence to the contrary, the presumption arises that this possession of such drug was unlawful, and the burden of showing that such narcotic drug was lawfully obtained and possessed by him, is a matter of defense to be proved by evidence sufficient to raise in your minds a reasonable doubt as to the unlawfulness of the defendant's possession of such drug."

▆ The state had the burden of proving beyond a reasonable doubt that the appellant, on or about the times fixed in the information, had possession of the marijuana cigarettes. When possession was thus proved, it became a matter of defense, a burden resting on the appellant, to show to the satisfaction of the jury that his possession of the drug was either unwitting, or authorized by law, or acquired by lawful means in a lawful manner, or was otherwise excusable under the statute. Of course, the burden of showing such defenses to the charge of possession did not in any way deprive the appellant of his defenses either of want of possession or that the evidence failed to show

beyond a reasonable doubt such possession. *State v. Helmer*, 166 Wash. 602, 8 P.2d 412 (1932).

Affirmed.[1]

ROSELLINI, C. J., HILL and HUNTER, JJ., and KALIN, J. Pro Tem., concur.

February 9, 1967. Petition for rehearing denied.

*Reported in 422 P.2d 1.

[1] Judge Kalin, who participated in the hearing and decision of this appeal, signed the foregoing opinion prior to his death on December 9, 1966.