THE STATE OF WASHINGTON, *Respondent*, v. HAROLD RAYMOND
MILLER, *Appellant*.

*Phil Mahoney*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Michael P. Ruark, Deputy*, for respondent.

HOROWITZ, C.J.—Defendant, after jury trial, was convicted of unlawful possession of dangerous drugs. He appeals.

Detective Douglas Bussa obtained a search warrant on

the afternoon of November 17, 1970, to search the private home of a Mrs. Borden in south King County, Washington. His search warrant affidavit stated that he had been informed by a reliable informant that on the afternoon of November 17, the latter had observed a large quantity of dangerous drugs in various containers in the house here involved and that he believed that the drugs were kept at the house until they could be illegally sold or otherwise disposed of. The informant also stated that he had observed two individuals in the house, who were known to him as drug pushers, discussing the disposition of drugs.

On November 17, 1970, about 6 p.m., Detective Bussa and other officers undertook to execute the search warrant. As he approached the house described in the search warrant, the side door he had planned to enter started opening. He stepped back out of sight to avoid being seen, and apparently, he was not seen. A young boy opened the door far enough to permit one to walk in or out of the house. The boy then turned around and started back into the house. Detective Bussa followed after him without announcing his presence or purpose in entering or demanding admittance.

After the detective had proceeded three or four paces into the house, the detective saw the defendant. Defendant was then seated on a chair reading at the dining room table. He made no attempt to run away. A black leather coat was draped over the back of the chair on which the defendant was seated. The detective picked up the coat and, on search of its pockets, found two bottles of pills later identified as containing dangerous drugs, namely, barbiturates and ritalin. There was nothing on the bottles to identify them as belonging to the defendant. There were no identifying marks on the jacket and nothing in the pockets to show it belonged to the defendant. No drugs were found on defendant's person.

Detective Bussa arrested defendant. As the detective and the defendant were leaving, defendant did not take possession of the black leather jacket, but took a yellow jacket from another part of the room.

Defendant was then temporarily living in the house, his bedroom being upstairs. A fellow detective searched the bedroom shortly after Detective Bussa entered, but the search yielded no dangerous drugs. Aside from the defendant, the boy, and possibly Mrs. Borden, no other persons were present in the house. However, other men were living in the house. They were arrested later that evening.

In due course defendant was charged and convicted of the crime of unlawful possession of dangerous drugs and this appeal followed.

Defendant contends the court erred in denying his oral motion to suppress the evidence seized at the time of the defendant's arrest. The motion does not identify the evidence. Presumably, the evidence sought to be suppressed included the black leather jacket, the two bottles containing the dangerous drugs, and substitutionary evidence describing them. *State v. Melrose*, 2 Wn. App. 824, 470 P.2d 552 (1970).

In support of his motion to suppress, defendant argues that the evidence is inadmissible because obtained as a result of an unannounced and uninvited entry into a private home. U.S. Const. amend. 4; Const. art. 1, § 7; and RCW 10.31.040. The state contends the entry was lawful because it was neither forcible, arrogant nor malicious, nor an intentional violation of law by the arresting officer. We agree with defendant and reverse the judgment below.

The common-law rule and statutes embodying it prohibited unannounced entry by law enforcement officers into a private home for the purpose of arrest or search. The rule has been much considered in recent decisions of the Supreme Court of the United States and in recent law review discussions.[1] *Sabbath v. United States*, 391 U.S. 585, 20 L.

[1]Note, *Announcement in Police Entries*, 80 Yale L.J. 139 (1970); Note, *"No Knock" Search and Seizure and the District of Columbia Crime Act: A Constitutional Analysis*, 62 J. Crim. L. 350 (1971); Note, *No-Knock and the Constitution: The District of Columbia Court Reform and Criminal Procedure Act of 1970 [A Critique and Proposed Alterations]*, 55 Minn. L. Rev. 871 (1971); Comment, *The New "No Knock" Provision and Its Effect on the Authority of the Police to Break*

Ed. 2d 828, 88 S. Ct. 1755 (1968); *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963); *Miller v. United States,* 357 U.S. 301, 2 L. Ed. 2d 1332, 78 S. Ct. 1190 (1958). *Sabbath* and *Miller* were each a case of warrantless arrest made in the defendant's private apartment or house followed by a search incident thereto. The arrest and search in *Sabbath* occurred in Los Angeles, California; the arrest and search in *Miller* occurred in Washington, D.C. The validity of the arrest in each case turned upon the legality of the method used in effecting the arrest and search in light of the criteria embodied in 18 U.S.C. § 3109.[2] *Ker* involved the validity of a warrantless arrest and search incident thereto in light of California Penal Code § 844.[3] The statutes involved or discussed in *Sabbath, Ker,* and *Miller,* with respect to the manner of executing a search warrant or making an arrest of a person within a private house are in substance similar to RCW 10.31.040. Each embodies the substance of the common-law rule classically formulated by way of dicta in *Semayne's Case,* 77 Eng. Rep. 194, 195 (K.B. 1603):

> In all cases when the King . . . is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the [King's] process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open [the] doors . . .

*Miller* protected the rights of the owner of an invaded private house, but not because such protection was consti-

---

*and Enter,* 20 Am. U.L. Rev. 467 (1970-71); Note, *Unannounced Entry to Search: The Law and the "No-Knock" Bill* (S. 3246), 1970 Wash. U.L.Q. 205.

[2] "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

[3] "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

tutionally required. In *Ker,* the common-law rule and the statutory embodiments of that rule received the protection of the Fourth Amendment binding upon the federal government and also binding upon the states by virtue of the Fourteenth Amendment.

In Washington, RCW 10.31.040 provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

Two questions are presented: First, the meaning and effect of RCW 10.31.040, in order to determine whether the search warrant was executed in conformity with the statute; secondly, the determination of whether the statute so interpreted complies with the Fourth Amendment[4] and with article 1, section 7 of the Washington State Constitution.[5]

The two questions are interrelated and may be dealt with together. We first deal with the reach of RCW 10.31.040. To do so we must determine if the trial court correctly held that the words "break open" as used in that statute require forcible breaking. We hold they do not.

The phrase "break open" contained in RCW 10.31.040 must be read in the light of the Fourth and Fourteenth Amendments. In *Sabbath v. United States, supra* at 590, the court said:

> The protection afforded by, and the values inherent in, § 3109 must be "governed by something more than the fortuitous circumstance of an unlocked door." *Keiningham* v. *United States,* 109 U. S. App. D. C. 272, 276 287 F. 2d 126, 130 (1960).

In *Keiningham,* officers with a search warrant made an unannounced entry through a freshly cut door in a partition between the porch of a private house and the porch of

---

[4] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

[5] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

an adjoining private house. After entering, the officers looked through the glass pane in an inner door and observed people in the house. After knocking on the inner door, identifying themselves, and announcing their purpose, they forced the inner door and arrested the defendants. In reversing the conviction because of an illegally executed search, the court said:

> A few cases have sought to distinguish between a locked and an unlocked door, in terms of the officer's duty to make an announcement before entering. . . . This distinction seems to view entry through an unlocked door as "peaceful." . . . We think that a person's right to privacy in his home (and the limitation of authority to a searching police officer) is governed by something more than the fortuitous circumstance of an unlocked door, and that the word "break," as used in 18 U.S.C. § 3109, means "enter without permission." We think that a "peaceful" entry which does not violate the provisions of § 3109 must be a permissive one, and not merely one which does not result in a breaking of parts of the house. We hold that the officers "entered" 1108 when they passed through the door in the partition, and we decide these cases on the narrow ground that an announcement, at least, was required at that time.

*Keiningham,* 287 F.2d at 130.

We interpret *Sabbath* as approving the view "that the word 'break' as used in 18 U.S.C. § 3109, means 'enter without permission,'" and that, accordingly, entry may not be made by the police officer under the substantially similar RCW 10.31.040 without first announcing both identity and purpose of entry and demanding admission.

The rule stated is not an inexorable one applicable regardless of the existence of exigent circumstances excusing the necessity of announcement, purpose, and demand for admission. *Miller* referred to possible exigent circumstances, but none were there found to exist. Both the majority and the minority opinions in *Ker* dealt with the exigent circumstances required to excuse announcement of identity, purpose, and demand for admittance. The minor-

ity opinion, for example, described three such kinds of exigent circumstances, namely:

(1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted.

*Ker*, 374 U.S. at 47. Other possible exigent circumstances have been discussed in legal writings, but they need not detain us here. *See* Sonnenreich and Ebner, *No-Knock and Nonsense, an Alleged Constitutional Problem*, 44 St. John's L. Rev. 626 (1970).

In *State v. Young*, 76 Wn.2d 212, 455 P.2d 595 (1969), the court considered whether a search warrant for drugs was illegally executed in light of RCW 10.31.040, Const. art. 1 § 7, and the Fourth Amendment. In that case

One of the officers . . . knocked and called out, "Police" loudly enough to be heard by the officers at the front door. This announcement was followed by screaming, yelling, and the sound of the occupants scurrying and running throughout the house. Within seconds of announcing themselves, officers broke through both the front and rear doors simultaneously. Upon entry, the officers observed defendant and certain occupants of the house running. One witness testified, "Well, when they [the police] came through the door, all I remember is everybody ended up in the bathroom."

This race for the bathroom ended with the police seizing several small rubber balloons containing heroin. One was found on the floor; another in the bathtub; others were retrieved from the commode just as they were about to be flushed away. They were introduced into evidence.

*Young*, 76 Wn.2d at 213. The court held the officers had reasonable cause to believe from what they heard on ar-

rival at the house that destruction of evidence would follow announcement of purpose and demand for admittance and that accordingly, exigent circumstances excused the necessity for announcement of purpose and demand for admittance.

*State v. Hatcher*, 3 Wn. App. 441, 475 P.2d 802 (1970) is a case in which the court affirmed the trial court's order suppressing evidence obtained in executing a search warrant in a manner violative of the Fourth Amendment. The court reviewed the *Ker* and *Young* cases and held that there were no exigent circumstances in that case that excused compliance with the "knock and announce" rule.

In *Hatcher* police officers, executing a warrant to search an apartment for drugs, could see into the living room of the apartment through a small window in the front door. Hatcher was observed seated on a small sofa apparently asleep. Another man was seated on a chair shaving, scraping or picking one of his legs with a knife. A woman was on the floor engrossed with a jigsaw puzzle. No narcotics were observed. Without knock or other warning, the officers broke the front door, entered the apartment, and took the three people into custody, but only Hatcher was placed under arrest.

After entry and as the officers approached, Hatcher attempted to swallow a small balloon. One of the officers prevented him from doing so. Hatcher had two balloons on his person; another was on the floor near him. Hatcher later stated that all three balloons belonged to him. Each contained heroin. One of the officers recognized Hatcher as a person he knew to be involved with drugs. Hatcher did not reside in the apartment. He testified he was visiting friends. No other drugs were found on the three persons in custody or in the apartment itself.

The officers testified that it was the practice of the Seattle Police Department to force the doors of premises without knocking or warning when executing search warrants for narcotic drugs. The officers testified this policy was followed because heroin is usually kept in small, pea-sized

balloons which can be, and frequently are, swallowed or flushed down a drain.

The court distinguished *State v Young, supra,* because of the presence in that case of exigent circumstances. The court said at page 448:

> Although *Young* does not expressly reject the blanket search policy, it does, as does *Gastelo* [*People v. Gastelo,* 67 Cal. 2d 586, 432 P.2d 706 (1967)], require some unambiguous act or necessitous circumstance as a condition precedent to an unannounced breaking into a private residence for the avowed purpose of preventing the destruction of evidence.
>
> . . .
>
> . . . Had the police officers knocked and announced the purpose of their visit, they could have seen immediately the reactions of the persons present in the apartment. If their reactions suggested that they intended to dispose of evidence, the officers could have forced their way into the apartment without any further compliance with the knock and announce rule. Since the officers were able to see into the apartment, they had an unusual opportunity to discover immediately and unambiguously the manner in which those present in the apartment chose to react to the announced presence of the law. We are unable to conclude that the method adopted by the police, in the unusual circumstances of this case, significantly increased the chances that they would secure the evidence before it could be destroyed. . . .
>
> Since the warrant was executed in a manner violative of the Fourth Amendment, the order suppressing the evidence taken in the search is affirmed.

*Hatcher* emphasizes the necessity for application of the Fourth Amendment to the facts of the particular case. It rejects the validity of a general refusal to apply the knock and announce rule in the interests of efficiency. It follows *Ker* in its statement that compliance with the knock and announce rule is excused

> where those within, [the private apartment] made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the

belief that an escape or the destruction of evidence is being attempted.

*Hatcher*, 3 Wn. App. at 444. As the court said in *Hatcher*, 3 Wn. App. at 446:

Public concern about the traffic in narcotics makes judicial approval of the blanket no-knock search policy of the Seattle Police Department very tempting. But the protective constitutional moat which surrounds every man's home—his castle—may not be indiscriminately drained either by police policy or judicial fiat.

(Footnote omitted.)

■ The rationale of *Keiningham v. United States, supra,* seemingly approved in *Sabbath v. United States, supra,* supports the rationale of *State v. Hatcher, supra.* The entry having been uninvited and unaccompanied by a prior announcement "of identity and purpose and a demand for admittance," the evidence was illegally seized and the motion to suppress should have been granted.

■ Of the remaining assignments of error, assignments 2, 7, 8, 9 and 10 are not specifically argued and must be deemed abandoned. *State v. Myers,* 6 Wn. App. 557, 494 P.2d 1015 (1972). It is unnecessary to rule upon the remaining assignments of error because the errors complained of are unlikely to reoccur.

The judgment is reversed for new trial.

WILLIAMS and CALLOW, JJ., concur.