[No. 672-2.    Division Two.    July 31, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. CURTIS
LEE JOHNSON, *Appellant*.

*Ralph A. Alfieri* (of *Alfieri & Holifield*), for appellant
(appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael T. DiJulio, Assistant Chief Deputy,* for respondent.

PETRIE, C.J.—Defendant's appeal from his conviction and subsequent sentence for the crime of robbery raises six separate issues. He contends (1) that the system for select-

ing petit jurors in King County is inherently unfair—and violates his right to an impartial jury guaranteed to him by the sixth and fourteenth amendments to the United States Constitution—because the opportunity for selection of minority representation on the panel is diminished; (2) that he was denied a fair and impartial trial because his in-court identification by witnesses was tainted by previous, improper out-of-court identification; (3) that he was denied a speedy trial constitutionally guaranteed by the sixth amendment to the United States Constitution; (4) that police officers were improperly permitted to identify items of physical evidence taken from his person at the time of his arrest without a proper foundation therefor having been laid; (5) that the trial court erred in denying his motion to suppress evidence seized in his apartment; and (6) that the cumulative effect of all the foregoing errors so prejudiced him that he was deprived of a fair trial.

We recite only so much of the facts as to answer the several assignments of error raised. Ernest Teague and his wife Mildred own and operate a retail jewelry store in Seattle, Washington. On July 3, 1970 a man, whom they subsequently identified as the defendant, entered their store, talked to Mrs. Teague about purchasing a ring which had been displayed in the window of the store and, after being advised there was some uncertainty as to price, was advised to return later in the afternoon when Mr. Teague was expected to return from lunch. The man did return and engaged in a conversation with Mr. Teague for a minimum of 15 minutes, discussing the possible purchase of either of several rings or watches which were on display in various locations throughout the store. At one point in the conversation the prospective customer glanced at the clock, pulled a gun from his belt, told Mr. Teague to "Get the cash," and struck Mr. Teague on the forehead with the sight of the gun causing considerable bleeding. The man with the gun left the store after demanding and receiving several rings and watches together with a sum of cash. In addition to being witnessed by Mr. and Mrs. Teague, the

above incidents were witnessed, in part, by Walter Beldi, an employee, who had been working in a back room with a partially obstructed view of the front of the store.

The robbery was reported to the police and over the next several months Mr. and Mrs. Teague examined pictures of, in Mr. Teague's words, "several hundreds of colored people." On one of these occasions, both Mr. and Mrs. Teague, acting independently of one another, picked one of the pictures—that of the defendant—and "laid it separate." The defendant was arrested and placed in a police lineup on October 12, 1970. An attorney who then represented the defendant was present at the lineup and the defendant selected his own position in the lineup.

He was positively identified by Mr. and Mrs. Teague as the person who robbed them. Mr. Beldi recognized the man, but "was not hundred per cent sure," so he put a question mark on the lineup sheet. At trial, on February 16-19, 1971, Mr. and Mrs. Teague again identified the defendant and Mr. Beldi testified, "after looking at the man again, my doubt has disappeared." When asked when he had seen the man since the lineup, he declared, "this morning when the man was led into the courtroom."

When he was arrested, on October 9, 1970, the defendant was wearing two rings and a wristwatch which were subsequently identified as items similar to those taken from the Teague Jewelry Store. After the lineup proceedings had been concluded, a search warrant was obtained and the defendant's apartment was searched by two detectives. Items seized in the search included 41 rings, 3 watches and a watchband. Most of these items were subsequently identified as items similar to those taken from the Teague Jewelry Store, although it was conceded that all items, not being precisely identifiable by completely unique markings or recorded numbers, conceivably could have been obtained from other stores.

Defendant's challenge to the jury panel is premised upon King County's adherence to the provisions of RCW 2.36.060, which requires that the county be divided into not less than

three equal jury districts and that an equal number of veniremen be selected from each district. Actually, for jury selection purposes, a master list of approximately 8,000 prospective veniremen is prepared annually and the names thus chosen are placed into four separate boxes based upon geographic location of each person's address. Every 2 weeks a new panel of 360 names is drawn, equally from each box, but randomly from within any given box. The defendant does not challenge the formula by which the master roll is formulated, but contends that the system of distribution from the master list impairs his opportunity to be tried by a jury on which minorities are represented because some geographic districts in King County have less minority population than other geographic districts.

For over 90 years it has been the law of the land that a conviction of a crime in a state court violates the equal protection clause of the fourteenth amendment to the United States Constitution if it is based upon the verdict of a jury from which Negroes have been excluded because of their race. *Strauder v. West Virginia,* 100 U.S. 303, 25 L. Ed. 664 (1880). But purposeful discrimination may not be assumed or merely asserted—it must be proven. *Tarrance v. Florida,* 188 U.S. 519, 47 L. Ed. 572, 23 S. Ct. 402 (1903). In the case at bench, there is no proof whatsoever that the system established by statute and applied by King County results in racial discrimination.

We understand the major thrust of defendant's contention is that the names of prospective jurors are not drawn randomly from the *entire* county; they are drawn from the four different districts. Again, he does not support a claim of racial discrimination by any evidence. Instead, he directs our attention to a most informative, but not really relevant, law review article, M. Finkelstein, *The Application of Statistical Decision Theory to the Jury Discrimination Cases,* 80 Harv. L. Rev. 338 (1966). If there is some statistical formula based on the laws of probability indicating that the statutory mandate results in racial discrimination it is incumbent upon the defendant to not only delineate such a

formula for us, but also to express through use of expert testimony its proper application to the facts in this case. Over 60 years ago it was determined that the basic system of jury selection mandated by the statute was undeniably "a jury of the county." *State v. Newcomb*, 58 Wash. 414, 109 P. 355 (1910). We see no merit to defendant's contention that the system of jury selection applied herein resulted in any discrimination of his opportunity to be tried by "an impartial jury of the state and district wherein the crime shall have been committed" (sixth amendment to the United States Constitution); or by "an impartial jury of the county in which the offense is alleged to have been committed." Article 1, section 22, Constitution of the State of Washington.

We can, and do, dispose of the remainder of defendant's assignments rather summarily.

██ He contends that an attorney representing him should have been present at the time witnesses were viewing a series of photographs, and before he was in custody. We have previously rejected such a contention. *State v. Grays*, 1 Wn. App. 422, 463 P.2d 182 (1969). He contends that the lineup was unfair because his complexion was lighter than the other four persons in the lineup and because he was made to stand in a spot with a rectangular marking on the floor. The defendant's attorney was present at the lineup and, so far as the record discloses, did not object to the use of the specific participants. Further, the defendant's position in the lineup was exclusively his own choice. We find nothing impermissibly suggestive about the lineup giving rise to a very substantial likelihood of irreparable misidentification. Finally, the defendant contends that the three identifying witnesses, who had been excluded from the courtroom, were permitted to see the defendant being led out of the courtroom, in handcuffs. There is no indication in the record of impropriety on the part of the prosecution. Indeed, in view of the defendant's prior record, attempted escape and avowed declaration to attempt another escape, it would have been folly to have permitted

the defendant to roam the halls unfettered and unattended. In the practical realities of a trial it is impossible to achieve what the defendant wants—identification accomplished only within a laboratory atmosphere free from any subliminal persuasions. *See State v. Basford,* 1 Wn. App. 1044, 467 P.2d 352 (1970)..

Defendant contends he was deprived of his constitutional right to speedy trial. We find none of the constitutional standards violated. *State v. Davis,* 2 Wn. App. 380, 467 P.2d 875 (1970).

Next, the defendant contends the trial court erred in overruling his objection to a police officer's identification of jewelry taken from the defendant's person at the time of arrest because there was, at that time, no evidence that the rings were tied to the crime charged. Although the officer's testimony may have been premature in the sense that the corpus delicti had not yet been established, the commission of the crime and the association of the jewelry with the crime charged was subsequently established. The circle of identity of physical evidence is rarely established by one witness alone; the circle is usually closed by the testimony of several witnesses. The trial court has considerable discretion in permitting the circle to be drawn by beginning at any one point. *State v. Anderson,* 10 Wn.2d 167, 116 P.2d 346 (1941); *State v. Hettrick,* 67 Wn.2d 211, 407 P.2d 150 (1965). We find no error.

The defendant challenges the trial court's denial of his motion to suppress evidence seized in the search of his apartment. However, the appropriate record has not been certified to us. There is, therefore, no basis for us to ascertain why the trial court's ruling should be disturbed. There being no substance to any of the assignments of error asserted, there can be no cumulative effect of error.

Judgment affirmed.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied December 21, 1972.

Review denied by Supreme Court February 9, 1973.