[No. 1939-1.   Division One.   July 23, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE SINGLETON, JR., *Appellant*.

*Ethel J. Williams,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *John E. Nelson, Deputy*, for respondent.

SWANSON, C.J.—George Singleton, Jr. appeals from a judgment and sentence entered after a jury found him guilty of six counts of violation of the Uniform Controlled Substances Act, RCW 69.50, consisting of four counts of delivery of heroin, one count of possession of heroin, and one count of possession of methamphetamine.

The primary issue presented by this appeal is the lawfulness of a police officer's forcible nighttime entry into a private dwelling in the execution of a search warrant.

Singleton was arrested after a police search at his place of residence resulted in the discovery of a bottle of pills which was subsequently introduced into evidence at trial and shown to be methamphetamine. His arrest led to a booking search of his person which revealed a small quantity of heroin, also introduced into evidence at the trial below. Prior to commencement of the trial, appellant moved to suppress the evidence obtained as the result of the search of his residence and the arrest resulting therefrom, contending the warrant was illegally executed and consequently that the items discovered by the search were illegally obtained.

The trial court rejected appellant's argument and denied the motion to suppress. While not disputing the validity of the warrant itself, appellant argues that the denial of his motion constituted error because the police failed to comply with the constitutional guarantees against unreasonable searches and seizures,[1] and the provisions of RCW 10.31.040[2] which require that the lawful execution of a

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. 4.

"INVASION OF PRIVATE AFFAIRS OR HOME PROHIBITED. No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. 1, § 7.

[2] "To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other

search warrant by forcible entry be preceded by an announcement of identity and purpose, accompanied by a demand for admittance. However, the state points out strict compliance with the requirement for such prior announcement before forcible entry is not required in all cases.

■ It was made clear in *Ker v. California*, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963), that an unannounced nighttime entry by police is constitutionally permissible in certain instances. As was stated in the separate opinion by Mr. Justice Brennan, 374 U.S. at 47:

> Even if probable cause exists for the arrest of a person within, the Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except . . . where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted.

Subsequently, in *State v. Young*, 76 Wn.2d 212, 455 P.2d 595 (1969), our state Supreme Court established the controlling rule governing unannounced entry into a dwelling in the service of a search warrant, by stating at page 217:

> Accordingly, we hold that when officers come armed with a valid search warrant, forcible entry without announcement of identity and purpose and a demand for admittance *may* be justified when exigent and necessitous circumstances exist, as in the instant case.

Therefore, the narrow issue presented to us for determination is whether exigent and necessitous circumstances were present in the case at bar to justify application of the exception described in *Young* with regard to the requirement that police announce their identity and purpose and demand admittance prior to resorting to forcible entry of a private dwelling in executing a search warrant. It is appellant's specific contention that the facts as presented to the trial court do not bring this case within that exception;

building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance." RCW 10.31.040.

hence, a brief review of the facts presented to the trial court is necessary.

At approximately 10:45 p.m. on January 12, 1972, four plainclothes Seattle police detectives approached the front of a house in Seattle's central area occupied by the appellant and a woman, Barbara Lowe, and her three young children. At the same time, several other nonuniformed police approached the back door of the residence. One of the detectives at the front door had a warrant to search the house, issued on the basis of an affidavit by a police agent that the house contained at least $200 worth of heroin. The police officers testified essentially that they knocked hard on the front door several times, then waited a few seconds and, receiving no answer, knocked again. At this time, they observed a person looking out the window but were unable to recognize the individual. There was also testimony that after the second knock, one of the officers said, "Police. Open the door." After knocking on the door, observing a person looking out the window, and making the demand that the door be opened, the officers noted activity within the house. Detective Fabry testified:

Q After you noticed the face in the window, sir, what action did you take then, if any? A I waited a few seconds. There was no answer at the door. I could hear what I assumed was fast movement inside. I still waited approximately two or three seconds. Q Fast movement of what, sir? A Like somebody running.

One of the officers at the rear of the house, Detective Ingertila, testified:

Q When you forced the rear door, for what reason did you do this? A When I forced the door I could hear the front door being forced from there and also there was commotion inside the apartment.

After hearing the movement that sounded like running, the officers forcibly entered the dwelling. In this connection, Detective Fabry testified:

Q After entering the premises, what did you do then, if anything, or observe? A I went immediately into the

bathroom where I found the defendent flushing the toilet. Q And what action did you take upon seeing the defendant flushing the toilet, if any? A At this point I told him we were police, we had a search warrant. I started to take him out of the bathroom. At this time he looked into the tiolet, smiled and left.

█ From these facts, the trial court concluded that the search was valid. The trial judge found that the police knocked on the door and then forcibly entered the house only after observing a face in a window and hearing sounds indicating "some movement and scuffling." The trial court also found that the word "Police" was stated by one of the police officers but expressed uncertainty as to whether the word was heard by the occupants of the house. The trial judge then stated in her oral opinion:

> However, the appearance of the face and the sounds of the movement I think led the police officers to a reasonable conclusion that there would be some movement inside the house and a disposition of a relatively small quantity of a drug, particularly in the light of the purchase and the information that had been available to the police. I think that is the kind of thing that should be considered in evaluating what the police do and whether or not they are justified in forcing an entry.

The trial court also noted in effect that an announcement by the police of their purpose would probably go unheeded and amount to a useless act in the situation presented in the instant case, where there was unambiguous movement inside the house and a likelihood that narcotics would be destroyed.[3]

---

[3]The rationale for the trial judge's conclusion that a forcible entry was justified, in the absence of an announcement of purpose, appears in her oral ruling, as follows:

> As to the announcement of their purpose particularly. One has to make some determination as to whether or not such an announcement would be of any effect or would be informative in any way and, when there is movement inside the house such as to the bathroom, which was considered in this case, that exception which has to do with forcing an entry is in response to a situation with drugs which is well known. The race to the bathroom is apparently such a well known situation in these cases that the officers are

Our review of the evidence supports the trial court's findings and conclusions as stated in its oral ruling on the defense motion to suppress. The conditions necessary for a valid execution of a search warrant, without a prior announcement of purpose, are present in the instant case. The police possessed reliable information indicating that narcotics were present in the house, and they had probable cause to believe that both appellant and his woman companion were dealers in narcotics. With that information as a background, the police knocked on the door several times, announced their identity, and demanded admittance. At this point, the police observed someone look out of the window at them, and immediately thereafter heard movement inside the house which sounded like running, presumably caused by the announcement "Police" at the door. We conclude that "exigent and necessitous circumstances" required by *State v. Young, supra,* are clearly present in the case at bar and, accordingly, the police properly executed the search warrant by forcing the doors of the house open. As was stated in *Young,* at page 217:

> To require strict compliance with a "knock and wait" rule in the execution of search warrants, no matter what the circumstances, would hamper the orderly enforcement of criminal law.

Before passing to appellant's second assignment of error, we note two cases upon which appellant places considerable reliance, *State v. Hatcher,* 3 Wn. App. 441, 475 P.2d 802 (1970), and *State v. Miller,* 7 Wn. App. 414, 499 P.2d 241 (1972). Both cases are clearly distinguishable from the instant case. The police officers in *Hatcher* broke in the front door without a knock or other warning, even though they

entitled to act quickly and far more quickly than they would be under other circumstances.

So far as sounds within the house, if it had been for a search of stolen property and so forth, I recognize these sounds alone would not entitle a forcible entry as was made in this case, but the disposition of narcotics being a legitimate concern, there were sufficient circumstances that the officers could have determined that there was a likelihood of the disposition and that there was movement.

were able to observe through a window the defendant and other occupants of the apartment, none of whom were doing anything suspicious, and no narcotics were observed. We were unable to find exigent and necessitous circumstances in that case because we could not say that the police officers had credible grounds upon which they could reasonably base a belief that the execution of the search warrant would be fruitless without an unannounced entry.

In *Miller,* evidence was seized during a search conducted by a police officer who surreptitiously entered the premises through a side door which had inadvertently been left open. We held that the entry was without permission and consequently forcible and that the police had failed to comply with the requirements of a prior announcement of identity and purpose accompanied by a demand for admittance, and that there were no exigent or necessitous circumstances present to excuse the failure to meet such conditions. *See State v. Young, supra.*

In the case at bar, as in *Young,* the police officers were armed with a valid search warrant, illegal narcotics were the object of the search, and the place to be searched was the residence of a known suspect. As distinguished from *Hatcher,* the police could not observe any part of the interior of the premises and, as distinguished from *Hatcher* and *Miller,* the officers nevertheless knocked; identified themselves and demanded entrance. These actions by the police, coupled with their observation of someone within the dwelling looking out at them and the unambiguous sounds from within the premises which followed, gave the officers reasonable and credible grounds to believe that the execution of the search warrant would be rendered of no effect if they delayed further.

We uphold the ruling of the trial court in denying the motion to suppress the evidence gained from the search of appellant's dwelling. In addition, appellant's complaint about the evidence seized following his arrest, consisting of a small amount of heroin found on his person, overlooks the fact that the police had probable cause to arrest based upon

their belief that it was the appellant who previously made the four separate deliveries of heroin to a police agent. Such cause to arrest was independent of any evidence found in the house; therefore, the heroin found on appellant's person was not the "fruit of the poisonous tree" even if we were to find the house search invalid.

Singleton's appeal next challenges the jury selection process in King County. He argues that because the jury panel was drawn exclusively from a list of registered voters, the large portions of the poor and minority segments of King County who are not registered voters were systematically excluded from jury service. Therefore, Singleton, a member of a minority race, claims he was denied his constitutional right to due process and equal protection of the law through trial by an impartial jury. The only objection to the jury panel made at trial by defense counsel, who is not counsel on appeal, was on the stated ground that

there is not a colored person on it and is disproportionate of the population of blacks in King County on the voting rolls as well as by population or on the jury panel showing that there is a possible studied elimination of blacks from the jury.

The objection was overruled, and a jury was empaneled.

■ An argument similar to appellant's was advanced in *State v. Johnson*, 7 Wn. App. 445, 500 P.2d 1272 (1972), which the court answered by stating at page 448:

But purposeful discrimination may not be assumed or merely asserted—it must be proven. *Tarrance v. Florida*, 188 U.S. 519, 47 L. Ed. 572, 23 S. Ct. 402 (1903). In the case at bench, there is no proof whatsoever that the system established by statute and applied by King County results in racial discrimination.

. . . If there is some statistical formula based on the laws of probability indicating that the statutory mandate results in racial discrimination it is incumbent upon the defendant to not only delineate such a formula for us, but also to express through use of expert testimony its proper application to the facts in this case.

Here, as in *Johnson*, no evidentiary showing was made, nor

offer of proof presented. Therefore, the appellant's challenge to the jury panel was properly rejected by the trial court.

As his third assignment of error, appellant contends that the jury was improperly and prejudicially instructed by the trial court's instruction No. 11, which states:

If you find from the evidence beyond a reasonable doubt that the defendant did on or about the dates set forth in either count of the information, in King County, state of Washington, deliver the controlled substance described in the information herein, then I instruct you that unless you find evidence to the contrary, the presumption arises that the delivery of such substance was unlawful and the burden of showing that such controlled substance was lawfully delivered by the defendant is a matter of defense to be proved by evidence sufficient to raise in your minds a reasonable doubt as to the unlawfulness of said defendant's delivery of such controlled substance.

Appellant argues that this instruction improperly creates the presumption that the delivery is unlawful, thereby placing the burden upon him to prove his innocence, *i.e.*, that the delivery was lawfully made. We do not agree. RCW 69.50.506(a) states:

It is not necessary for the state to negate any exemption or exception in this chapter in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this chapter. The burden of proof of any exemption or exception is upon the person claiming it.

The constitutionality of the quoted statute is indicated in cases which support the giving of an instruction, substantially similar to that here in question as to the burden of proving unlawful possession, which essentially states that once the state proves possession beyond a reasonable doubt, a rebuttable presumption arises that the possession was unlawful. *See State v. Morris,* 70 Wn.2d 27, 422 P.2d 27 (1966); *State v. Boggs,* 57 Wn.2d 484, 358 P.2d 124 (1961); *State v. Dodd,* 8 Wn. App. 269, 505 P.2d 830 (1973).

Instruction No. 11 places no burden of proof upon the

appellant unless the jury first determines beyond a reasonable doubt that he delivered the heroin. Only when the state makes such proof does the burden shift to the appellant to rebut the presumption of unlawfulness which then arises by explaining that the delivery was lawful. The reasoning adopted in *Boggs* and followed in *Morris* and *Dodd* as to the presumption of unlawful possession applies with equal force to the presumption of unlawful delivery. Significantly, appellant did not object to instruction No. 12, relating to unlawful possession, which is substantially similar to instruction No. 11.

Appellant directs us to *Walker v. Commonwealth*, 212 Va. 289, 183 S.E.2d 739 (1971), where the court struck down an instruction based upon a statute similar to RCW 69.50.506(a) which placed the burden directly upon the defendant to prove that his "possession, sale, or dispensing" was lawful. In *Walker*, even though there was a general instruction given as to the presumption of innocence, the instruction relative to the presumption of unlawfulness as to possession or sale of narcotics, unlike the instruction No. 11 given in the instant case, did not require the state first to prove the delivery beyond a reasonable doubt. Thus, *Walker* is inapposite to the case at bench. We conclude that instruction No. 11 was properly given.

Finally, appellant claims it was error to deny his motion in arrest of judgment or, in the alternative for a new trial, as to count 6, charging unlawful possession of methamphetamines, because of the insufficiency of the evidence of possession. Our review of the record discloses substantial evidence which the jury properly could believe to establish constructive possession by the appellant of the methamphetamine and it would unduly prolong this opinion to relate all of the details concerning such evidence. Suffice it to say that on January 12, 1972, appellant had been living with Barbara Lowe, at the premises where the controlled substances were found, for more than a year and one-half, and the testimony indicated that she assisted him in the sale of heroin to a police agent at the home. The methampheta-

mine pills were discovered in the kitchen of the home, and although some evidence was offered as to the fact others had occupied the house, the evidence was sufficient to create an issue of constructive possession for the jury. *See State v. Callahan,* 77 Wn.2d 27, 459 P.2d 400 (1969); *State v. Clay,* 7 Wn. App. 631, 501 P.2d 603 (1972).

Further, we note the appellant failed to except to the court's instructions to the jury placing the issue of constructive possession before it. Such instruction is therefore the law of the case, and appellant cannot now for the first time question the sufficiency of the evidence to support the instruction. In any event, there was sufficient evidence of dominion and control to support the giving of the instruction and the verdict of the jury. The motion for arrest of judgment, or in the alternative for a new trial, was properly denied. *See State v. Randecker,* 79 Wn.2d 512, 487 P.2d 1295 (1971).

Judgment affirmed.

HOROWITZ and FARRIS, JJ., concur.

Petition for rehearing denied August 16, 1973.