[No. 1718-1. Division One. November 5, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. STEPHEN WARREN BARR, *Defendant,* HERMAN DON HARTZOG *et al., Appellants.*

*R. Stewart Bock* and *William C. Tobin, Jr.*, for appellants (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Corydon J. Nelsen, Deputy*, for respondent.

FARRIS, J.—At about 1 a.m. on February 23, 1972, three masked men, each armed with a handgun, entered Lancer's Inn, a cocktail lounge. They took $245 from the cash register and additional money and personal property from the customers. After a few minutes, they left and the police were called.

Herman D. Hartzog and Thomas R. Merrill were arrested on March 14, 1972, and charged with the crime of armed robbery arising from the incident. A third man accused of the crime, Stephen Barr, entered a guilty plea. On May 17, 1972, after trial, a jury returned general verdicts of guilty and special findings of possession of a deadly weapon-firearm as to each defendant. The trial judge sentenced each defendant to 40 years in prison. This appeal followed.

The principal witness for the state was Rosemary Swartz. After testifying that the defendants left her motel room around 9 p.m. and returned after 1 a.m., Ms. Swartz was asked:

> Q Can you describe for the jury what these individuals did after they walked into the room?
> A They were coming in laughing and they dumped a bag of money and other stuff on the bed.

She was also asked:

> Q Did the three individuals have any particular conversation concerning this robbery, Mrs. Swartz?
> A Most all they were doing was joking about what they had did, and joking about a cop being across the street.
> Q Did they indicate where this cop was located across the street?

MR. BOCK [attorney for defendant Merrill]: Excuse me once again. She is again testifying in terms of "they said" and "he said" and so on. Maybe she can tell who said what. I object to this line of questions and answers if she can't tell or identify who the speaker is.

THE COURT: You should ask her if she recalls specifically who made the statements.

Q Are you able to say who made the particular statement about the police?

A No.

Q Were all three of the individuals involved in the conversation?

A Yes.

Q Any one of the individuals that you refer to that were not involved in the conversation?

A I couldn't swear to that.

Q Were there any other conversations concerning the robbery that you heard, if you can recall?

A Specifically, no.

Ms. Swartz described the conduct of the three men before leaving the motel and after their return. She described personal property as well as ski masks, a pillowcase, gloves, and two handguns which she observed. She identified news articles about the crime that she had cut out and saved at the request of Barr. She further testified to a threat from one of the defendants if she testified in the cause.

The defendants contend that Ms. Swartz' testimony about the conversation among Hartzog, Merrill and Barr following the robbery was inadmissible hearsay since she was unable to identify who made any particular statement. Defendants argue that an admission of one person cannot be introduced as evidence against another and that Ms. Swartz' failure to identify the makers of the admissions rendered all of her testimony regarding the overheard conversation inadmissible.

■ The Swartz testimony was not offered to prove the truth of the statements testified to, but to place the participants at the scene of the robbery. The only specific fact to which Ms. Swartz testified was that "a cop [was] across the

street." The issue was not the truth of that or any other statement, but whether the three men had such a conversation. If whether "a cop [was] across the street" was in issue, a hearsay question would be raised, but whether the three men were "joking about what they had done" is a question to which Ms. Swartz is a firsthand witness. Her testimony was not admitted as an exception to the hearsay rule; it was not hearsay.

Hartzog and Merrill rely on *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), in assigning error to the admission of the testimony. The court recently clarified the meaning of *Bruton* in *Dutton v. Evans*, 400 U.S. 74, 88, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970):

> Neither a hearsay nor a confrontation question would arise had [the witness'] testimony been used to prove merely that the statement had been made. The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements. From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard.

(Footnote omitted.)

 If an instruction as to the limited probative value of Ms. Swartz' testimony about the motel room conversation had been requested, the trial judge should have given it. However, in the absence of a request for a limiting instruction, the failure to give such an instruction is not error. *State v. Adams*, 5 Wn. App. 366, 487 P.2d 218 (1971).

Detective Karban of the Seattle Police Department testified, over objection, that he had found a .22 caliber revolver in defendant Merrill's apartment on March 14, 1972. Karban also testified, over objection, that on March 11, 1972, he had searched with Ms. Swartz' permission the residence of Ms. Swartz and Barr, and found a brown ski mask, a blue stocking cap, and a nylon stocking.

■ The defendants argue that the trial court erred in admitting exhibits Nos. 3, 4, 5, 8 and 10: The handgun, ski mask, stocking cap, and nylon stocking found in Merrill's apartment 3 weeks after the robbery, and a handgun possessed by Barr. The trial court admitted these items for illustrative purposes only; there was no evidence that any of the items, except for Barr's handgun, was used in the robbery. The Supreme Court has established a test for admission as illustrative evidence:

> [M]odels, samples and objects offered in evidence for purely illustrative purposes must not only be relevant and material in character to the ultimate fact sought to be demonstrated by their use, but, additionally, must be supported by proof showing such evidence to be substantially like the real thing and substantially similar in operation and function to the object or contrivance in issue.

*State v. Gray,* 64 Wn.2d 979, 983, 395 P.2d 490 (1964). *See also State v. Pristell,* 3 Wn. App. 962, 478 P.2d 743 (1970).

Testimony was introduced to show that all three robbers carried handguns and that two of the three wore ski masks or nylon stockings over their faces. A proper showing was made by the prosecution that the illustrative evidence at issue was "substantially like the real thing." *State v. Gray, supra* at 983.

The exhibits thus met the requisites for introduction; the harm here was in the admission of evidence that the exhibits were the property of and in possession of the defendants. By so doing, the prosecutor did indirectly what he was unable to do directly. If the trial judge had ruled the exhibits to be relevant for general probative purposes, we could consider here whether the legal standard of relevance was met. Absent such a ruling, it was error to tie the exhibits to the defendants.

■ We have searched the record to determine whether this error prejudiced the defendants' rights to a fair trial. We find that it did not. The overwhelming evidence of guilt independent of the inference tying the "illustrative exhibits" to these defendants renders the error harmless. *See Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S.

Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Nist*, 77 Wn.2d 227, 461 P.2d 322 (1969); *State v. Forbes*, 74 Wn.2d 420, 445 P.2d 204 (1968).

Affirmed.

JAMES and WILLIAMS, JJ., concur.

Petition for rehearing denied December 20, 1973.