[No. 2127-1. Division One. May 13, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. BOBBY SMITH, *Appellant*.

*Robert T. Czeisler,* for appellant (appointed counsel for appeal).

*Robert E. Schillberg, Prosecuting Attorney,* and *Donald J. Hale, Chief Deputy,* for respondent.

JAMES, J.—Bobby Smith appeals from convictions at jury trial for robbery and kidnapping in the first degree while armed with a deadly weapon. Smith's counsel on appeal did not represent him at trial.

A Greyhound bus was "hijacked" by two men who were armed. The passengers were robbed and the robbers held one passenger hostage until they fled. Several days later, Smith was identified attempting to pass traveler's checks which had been stolen in the robbery. He was subsequently arrested and charged.

Smith first contends that the trial court abused its discretion in denying his motion for change of venue because of pretrial publicity. In support of his motion, Smith submitted clippings of articles from the Everett Herald. Three of these articles, including one large front page head-

line, refer to a "Bobby 'Scarface' Smith" as a suspect in the crime. Smith's theory is that:

> a juror would, upon seeing his noticeable scar on his face while at defense table or in the witness booth, associate appellant with the hijacking, much to appellant's prejudice.

He argues that this pretrial publicity created such a "probability of prejudice" that he need not prove "actual prejudice" in order to prevail. *State v. Stiltner,* 80 Wn.2d 47, 54, 491 P.2d 1043 (1971).

We do not agree. Here, there was neither the "carnival atmosphere" presumed to be prejudicial in *Sheppard v. Maxwell,* 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507 (1966), nor was the character of the reporting potentially prejudicial as in *State v. Stiltner, supra.* The newspaper accounts were essentially factual in nature and did not concentrate unduly upon Smith. The voir dire of the prospective jurors indicates that none remembered Smith's name being associated with the crime, and it is unlikely that they would remember that his nickname was "Scarface." Further, no pictures of Smith were apparently published. On these facts, prejudice cannot be presumed. *See State v. Braun,* 82 Wn.2d 157, 509 P.2d 742 (1973). Since "actual prejudice" has not been shown, the trial court did not abuse its discretion. *State v. Valenzuela,* 75 Wn.2d 876, 454 P.2d 199 (1969).

Smith next contends that the court erred in denying his challenge to the entire jury panel because of its lack of a proportionate representation of Blacks. In support of this motion, Smith's trial counsel presented his own affidavit in which he stated that he had observed the jury panel and that all were of Caucasian descent; that Snohomish County had a non-Caucasian population of 8 to 10 percent; and that in 10 years of practice, he had never noted a jury panel with more than one non-Caucasian on it. Smith cites *Alexander v. Louisiana,* 405 U.S. 625, 31 L. Ed. 2d 536, 92 S. Ct. 1221 (1972), for the proposition that an inherently disproportionate number of Blacks on a grand jury panel creates a

presumption of invidious discrimination to which the good faith of the administrators is no defense.

In *Alexander*, the court rested its decision upon two combined grounds. The jury challenge was supported with detailed evidence on the selection process and statistical data on the resulting venire. The evidence showed that there were significant decreases in the proportion of Blacks at each stage in the selection process. The evidence also showed that the racial designation of potential jurors appeared on the information forms used throughout the selection process. The court concluded on the basis of the statistical improbability of such a panel and the "clear and easy opportunity for racial discrimination" in the selection process that a prima facie case of discrimination had been made out. *Alexander v. Louisiana, supra* at 630.

 Compared with such a showing, it is clear that Smith has not presented sufficient evidence of prima facie discrimination. Though his trial counsel had observed the jury panel and had not "noted" a jury panel with more than one non-Caucasian in 10 years of practice, this is not sufficient proof of statistically disproportionate representation. *State v. Johnson,* 7 Wn. App. 445, 448, 500 P.2d 1272 (1972). *See also* M. Finkelstein, *The Application of Statistical Decision Theory to the Jury Discrimination Cases,* 80 Harv. L. Rev. 338 (1966). Nor was any evidence presented which would indicate an *opportunity* for discrimination in the selection process. Without a proper evidentiary showing, the argument is without merit. *State v. Green,* 70 Wn.2d 955, 425 P.2d 913 (1967); *State v. Singleton,* 9 Wn. App. 399, 512 P.2d 1119 (1973).

Smith next assigns error to the court's failure to exclude a witness' in-court identification of him because he contends an earlier photographic display violated due process.[1]

---

[1]Smith did not raise this issue at trial, but seeks to raise it for the first time on appeal. We assume for the purposes of argument, that the "invasion of a constitutional right" exception applies, *State v. Lampshire,* 74 Wn.2d 888, 893, 447 P.2d 727 (1968), and will consider the assignment on its merits.

The witness was the store clerk who testified that Smith attempted to purchase merchandise with traveler's checks which were identified as having been taken in the robbery. The witness testified that subsequently the police gave him eight pictures and asked him "if any of them were the gentleman who was in [the store] previously and had tried to pass the Traveler's Checks." Two of the pictures were of Smith and the remainder were of different people. The clerk picked out both pictures of Smith.

■ Smith argues that the photographic display was constitutionally defective in that too few pictures were used, that two of the pictures used were of Smith and that only those of Smith showed an individual with a facial scar which had been mentioned by the clerk in his description to the police.

> The validity of the identification procedure is a question of fact for the jury's determination and appellate courts may reverse a determination of the identification issue adverse to the defendant only where the facts establish "[t]he photographic identification procedure . . . [is] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 19 L .Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Gefeller,* 76 Wn.2d 449, 458 P.2d 17 (1969).

*State v. Lane,* 4 Wn. App. 745, 750, 484 P.2d 432 (1971). Due process is violated only where there is a "substantial likelihood" of misidentification, not just a mere chance.

We find Smith's argument to be without merit. Though photographic displays may involve many pictures, the use of only eight in no way suggested that Smith was the suspect. Nor can we say that under these circumstances the use of two pictures of Smith was impermissibly suggestive. The pictures were apparently taken at different times and in each Smith has a different length of hair. The fact that the two pictures are of the same individual is not obvious. Finally, we cannot conclude that the other individuals were so dissimilar as to suggest Smith. Contrary to his conten-

tion, one of the other individuals has a scar on the same cheek as does Smith.

> *Simmons* recognized the inherent hazards of misidenti-
> fication where photographs are used, but concluded
> [that] cross-examination exposed the weakness in the
> process and lessened the danger of convictions based
> upon misidentification.

*State v. Lane, supra* at 750. Smith had the opportunity to cross-examine the clerk as to the effect which each of the complained-of factors may have had on his identification and then to argue to the jury that the identification was unreliable. The clerk testified that he had a very good opportunity to see the customer while waiting on him and that he was certain of his in-court identification. The court did not err in permitting the jury to consider the identification.

■ Smith's fourth assignment of error is that the court admitted hearsay evidence. Over objection, a police officer was permitted to testify that one of the bus passengers identified himself by name. The name he gave was the same as the one appearing on the traveler's checks which Smith attempted to use to purchase merchandise. Smith argues that the passenger's statement is inadmissible either because it is hearsay or because it was immaterial if not asserted for the truth of the matter contained therein.

We disagree. The passenger's statement was not introduced to prove the truth of the matter, but rather to identify a person who had said that his traveler's checks had been taken. The truth of what the passenger said is not in issue and the officer may relate what he heard. *State v. Barr*, 9 Wn. App. 891, 515 P.2d 840 (1973).

■ Nor is this evidence immaterial.

Any competent evidence which tends logically to prove a defendant's connection with a crime is material. Materiality is judged not only upon what the evidence shows standing alone, but also on whatever inferences may be drawn when it is viewed in connection with other evidence. Relevant and material evidence is admissible. Its cogency and the degree to which it elucidates facts in

issue become matters of the weight given the evidence by the jury. *State v. Gersvold,* 66 Wn.2d 900, 406 P.2d 318 (1965).

*State v. Whalon,* 1 Wn. App. 785, 791, 464 P.2d 730 (1970). The passenger's statement of his name, when coupled with his statement that his traveler's checks were taken in the robbery, and the evidence that Smith had in his possession checks made out to such a passenger clearly tend to prove some connection with the crime.

Smith's next contention relates to the state's use, during its case in chief, of testimony which he gave at the trial of an alleged confederate in the "hijacking." Smith argues that the statements were exculpatory in character and were only used to attack his credibility and character, before he had raised the issue by taking the stand. He further asserts that the use of these statements deprived him of his Fifth Amendment right to remain silent. He does not challenge the court's conclusion, following a CrR 101.20W hearing, that the statements were "voluntary."

█ The state answers that these statements were admissible to show his "consciousness of guilt" under *State v. Douglas,* 71 Wn.2d 303, 428 P.2d 535 (1967), and *State v. Peterson,* 2 Wn. App. 464, 469 P.2d 980 (1970). Though there is authority for the proposition that false statements of the accused may be introduced against him,[2] we decline decision on this basis. If error was committed, it will not be presumed to be reversible error without some resulting prejudice. *State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968). *See State v. Messinger,* 8 Wn. App. 829, 509 P.2d 382 (1973). Here, the statements were entirely consistent with Smith's asserted innocence and their admission cannot be said to have prejudiced him. Since they were not prejudicial and it is conceded that they were voluntary, Smith was in no way deprived of his Fifth Amendment right to remain silent.

Smith finally assigns error to the trial court's giving of

---

[2]*See, e.g.,* 2 H. Underhill, *Criminal Evidence* § 371 (5th ed. 1956) and cases cited therein.

an instruction requiring a special verdict as to whether he was armed with a *deadly weapon* at the time of the commission of the alleged offenses. Under RCW 9.95.040, an affirmative finding that the accused was so armed requires the Board of Prison Terms and Paroles to fix a minimum sentence of not less than 5 or 7½ years.[3]

The original information filed against Smith alleged only charges of robbery and kidnapping. Six days before trial, an amended information was filed adding an allegation that the charged offenses were committed "while armed or in the possession of a *firearm*." (Italics ours.) By this allegation, the state sought to subject Smith to the rigors of RCW 9.41.025[4] which would make him ineligible for a probation-

---

[3]RCW 9.95.040 provides:

"Within six months after the admission of a convicted person to the penitentiary, . . . the board of prison terms and paroles shall fix the duration of his confinement. . . .

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

"(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years."

[4]RCW 9.41.025 provides:

"Any person who shall commit or attempt to commit any felony, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

"(1) For the first offense the offender shall be guilty of a felony and the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;

"(2) For a second offense, or if, in the case of a first conviction of violation of any provision of this section, the offender shall previously have been convicted of violation of the laws of the United States or of any other state, territory or district relating to the use or possession of a firearm while committing or attempting to commit a crime, the offender shall be guilty of a felony and shall be imprisoned for not less

ary sentence as well as insure that he received a minimum prison term of 5 or 7½ years. Through inadvertence, Smith was not again arraigned, but the amended information was read to the jury without objection. At the conclusion of testimony, the jury was instructed that if they found Smith guilty of either or both charges, they were to determine:

> "Was the accused armed with a *deadly weapon* at the time of the commission of the crime?" A "deadly weapon" for this purpose is defined by law as any pistol, revolver, or any other firearm.

(Italics ours.) Instruction No. 13. At trial the only exception taken was for the failure to arraign Smith on the amended information.

On appeal, Smith supports his assignment of error with two arguments. In addition to reasserting as error the failure to arraign him, he also argues that he was denied his Fourteenth Amendment rights to due process by the "deadly weapon" finding because he had never been so charged under RCW 9.95.040.

■ The state first responds that this assigned error cannot be considered because Smith failed to set forth the challenged instruction in his brief as required by CAROA 43. Ordinarily, failure to set forth a challenged instruction in the brief will prevent review, as will failure to present the grounds relied upon to the trial court. However, instructions which allegedly violate a constitutional right "will be reviewed even though error was not properly claimed or preserved. *State v. Peterson,* 73 Wn.2d 303, 438 P.2d 183 (1968); *State v. East,* 3 Wn. App. 128, 474 P.2d 582 (1970)." *State v. Williams,* 4 Wn. App. 411, 413, 481 P.2d 918 (1971).

The state next contends that the failure to formally arraign Smith on the amended information was waived by Smith's failing to object at the commencement of trial when the amended information was read to the jury.

Finally, the state points out that the jury was instructed

than seven and one-half years, *which sentence shall not be suspended or deferred;* . . ." (Italics ours.)

that a "firearm" is a "deadly weapon" and that Smith was therefore not prejudiced because the jury's finding that he possessed a "deadly weapon" did not deny him the possibility of a probationary sentence—as would a finding that he possessed a "firearm."

■■ The inconsistencies resulting from the two legislative efforts to deter criminal use of firearms cannot be rationalized. But it is fundamental that an accused must be informed of the charge he is to meet at trial and that he cannot be tried for an offense not charged. U.S. Const. amend. 6; Const. art. 1, § 22 (amendment 10); *State v. Frazier*, 76 Wn.2d 373, 456 P.2d 352 (1969). Although it has been judicially determined that RCW 9.41.025 and RCW 9.95.040 create additional penalties rather than separate crimes, *State v. Frazier*, 81 Wn.2d 628, 503 P.2d 1073 (1972), it is required that the prosecution *allege* and prove the "factor [which] aggravates [the] offense and causes [a] defendant to be subject to a greater punishment than would otherwise be imposed." *State v. Frazier*, 81 Wn.2d 628, 633, 503 P.2d 1073 (1972); *State v. Nass*, 76 Wn.2d 368, 456 P.2d 347 (1969). As is pointed out in *State v. Frazier*, 81 Wn.2d 628, 503 P.2d 1073 (1972), notice that the state will seek the imposition of greater punishment is critical when plea bargaining is considered. Due process required that both the amended complaint charging Smith with possession of a *firearm* and the special verdict concern the same statute.

In view of this error, we need not reach the issue of the failure to arraign Smith on the amended information. The convictions for robbery and kidnapping in the first degree are affirmed and the case is remanded to the trial court for resentencing. The court will not be bound by the provisions of either RCW 9.41.025 or RCW 9.95.040 because no special finding appropriate to the former was made and Smith was not given notice in the information that the latter statute

would apply. *See State v. Frazier,* 81 Wn.2d 628, 635, 503 P.2d 1073 (1972).

Affirmed in part; remanded.

FARRIS and WILLIAMS, JJ., concur.