[No. 393-2.　Division Two.　January 23, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM ROBERT DODD, *Appellant*.

*Andrew L. Garnes*, for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney*, and *Joseph D. Mladinov, Special Counsel*, for respondent.

PEARSON, C.J.—Defendant, William R. Dodd, was tried before a jury for unlawful possession of dangerous drugs. Judgment was entered on the jury's verdict and defendant appeals. Four questions are raised for our decision: (1) whether the charges should have been dismissed by reason of former jeopardy; (2) whether certain oral admissions should have been suppressed for failure of the interrogating officer to adequately advise defendant of his constitutional rights; (3) whether the state adduced substantial evidence to support a finding that defendant was actually or constructively in possession of dangerous drugs; and (4) whether defendant was denied due process of law by reason of his trial counsel's failure to propose and the trial court's failure to give an instruction on circumstantial evidence.

On August 1, 1970, Trooper James C. Henson was called to the scene of an automobile accident. During the investigation, Trooper Henson observed that defendant, the driver of one of the cars involved, although uninjured, was very unsteady and the officer detected the odor of both alcohol and marijuana about defendant's person. While the trooper was filling out his accident report and questioning defendant regarding the details of the collision, defendant fell asleep. A few minutes later, Trooper Henson roused defendant and placed him under arrest for public intoxication, driving while under the influence of intoxicants, and/or drugs, and reckless driving. It is uncontradicted

that the officer informed defendant of his rights[1] at this time by reading them from cards in the officer's possession. Trooper Henson then took defendant to the station and administered the breathalyzer test. A reading of 0.03 was obtained.[2] Defendant testified that he told the officer he was not under a doctor's care and was not taking medication. Defendant also testified that Trooper Henson again read his rights to him prior to the breathalyzer test.

The low reading, coupled with the odor of marijuana previously observed, indicated drug use and on the basis of these facts a search warrant was obtained. The automobile driven by defendant was inspected and 75 pentobarbital tablets were discovered in the console compartment of the car. Trooper Henson testified unequivocally that the compartment was locked and that in order to obtain entry the lid had to be pried open. Moreover, the key ring in the ignition did not contain a key to the console.

Upon discovery of the drugs, the officer returned to the jail and questioned defendant. Prior to questioning, Trooper Henson urged defendant to get a lawyer, informed him of his right to remain silent, and of his right to have counsel present during interrogation. The officer also informed him of the drug discovery and possible felony charge, but did not inform him of his right to state-appointed counsel if he were indigent. Defendant told the officer he would contact an attorney the next day and said that he would answer questions that night without an attorney's presence. Trooper Henson testified that defendant admitted knowledge of the presence of the pills in the car, and that he had taken a couple earlier in the day, but denied that they belonged to him.

The evidence was uncontradicted that the car did not belong to defendant. The state also adduced no evidence that defendant had in his possession at the time of his

---

[1] By "rights" we mean that both the implied consent warnings (RCW 46.20.308) and *Miranda* warnings were read to defendant.

[2] A reading of up to 0.05 raises a presumption of sobriety with respect to alcoholic intoxication. RCW 46.61.506 (2)(a).

arrest a key with which to gain access to the console compartment. The owner of the car, who shared the same house with defendant, testified that the trunk key, not the ignition key, opened the console compartment.

On the day in question, the owner had hosted a party. During the day at least 15 people in addition to the defendant had used the vehicle. There were two sets of keys to the car and the disappearance of the trunk key from the key ring in the ignition at the time of the accident was not explained during trial. Defendant denied admitting to the officer that he had taken any pills or knew of their existence. He explained his intoxicated condition as the effect of a small amount of alcohol ingested at a time of physical exhaustion and emotional strain. He testified that he worked a night shift and on the day in question had been unable to sleep because of the party. He also testified that he and his girl friend were having problems and he was very disturbed about the deterioration of their relationship.

Separate complaints were initially filed in justice court, one for the felony charge of possession of dangerous drugs, and one for the charges of public intoxication, driving while under the influence, and reckless driving. Defendant pleaded guilty to the traffic offenses on August 4, 1970 and was subsequently sentenced. The felony charge was superseded to the superior court on August 4, 1970 on an information filed by the state. Ultimately the case came to trial and resulted in this appeal. Defendant contends that all charges arose out of the "same transaction" and that his second trial placed him in double jeopardy. *Waller v. Florida,* 397 U.S. 387, 25 L. Ed. 2d 435, 90 S. Ct. 1184 (1970); *Ashe v. Swenson,* 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970). We disagree.

■ The "same transaction" theory was not adopted by a majority of the court as the rule in *Ashe v. Swenson, supra.* Instead, the court held that the doctrine of collateral estoppel was embodied in the Fifth Amendment guarantee against double jeopardy. The court held quite specifically

that the question before it did not involve the question of whether the state could validly charge the accused with separate offenses, but whether the narrow issue of defendant's identity could be litigated a second time. In this case, defendant's plea of guilty entered in justice court to charges of public intoxication, driving while under the influence of intoxicants and/or drugs, and reckless driving, did not reach the issue of whether he actually or constructively possessed dangerous drugs. Consequently, collateral estoppel is no bar to the state's litigation of this issue for the first time. Defendant's reliance on *Waller v. Florida, supra,* is likewise misplaced. That decision held that a municipal court within a state and a state court of general jurisdiction were "arms of the same sovereign," and the sovereign, *i.e.,* the state, was barred by the Fifth Amendment from trying an accused for the same offense twice, once in each separate court. The court carefully noted that its decision was based on the assumption that the municipal ordinance violations for which the defendant was initially charged and convicted in municipal court were included offenses of the subsequent felony charge in superior court. In this case, none of the crimes to which defendant pleaded guilty were included offenses of the felony of possession of dangerous drugs. Consequently, the state was not barred from trying the accused on the separate felony charge.

We turn now to the question as to whether defendant's oral admissions to Trooper Henson should have been suppressed for failure to adequately advise defendant with respect to constitutional rights. A pretrial hearing, pursuant to CrR 101.20W, was held to determine the admissibility of defendant's statements. The only witness at this hearing was Trooper Henson. He testified that he read defendant's rights to him once at the scene of the accident and once at the jail prior to the breathalyzer test, and after the discovery of the pentobarbital tablets he urged defendant to obtain legal assistance prior to questioning. Trooper Henson testified that defendant had full knowledge of his

rights before questioning began and agreed to answer questions without the presence of counsel. Defendant argues that the trooper's unsubstantiated testimony is insufficient as a matter of law to establish a knowing, intelligent and voluntary waiver of his constitutional rights. *State v. Davis*, 73 Wn.2d 271, 438 P.2d 185 (1968); *State v. Erho*, 77 Wn.2d 553, 463 P.2d 779 (1970). We disagree. In both *Davis* and *Erho*, the uncorroborated testimony of one officer was held insufficient to establish a voluntary waiver in the face of defendant's sworn denial that he had been informed of his rights. In this case, defendant did not testify during the pretrial hearing. Trooper Henson testified on direct and was cross-examined at length, but no other evidence was offered. Moreover, it appears affirmatively in the record that defendant was present at the pretrial hearing and could have testified, had he chosen to do so. While we agree with defendant that the state has a heavy burden of showing a voluntary waiver of rights, our review of the trooper's uncontradicted testimony satisfies us that defendant was fully aware of his rights when he agreed to answer the officer's questions regarding the discovered drugs. Moreover, subsequent to the pretrial hearing and during the trial, when defendant did take the stand and did deny that he made the damaging admissions, he candidly admitted that the trooper had twice read him his rights from cards and that a conversation regarding an attorney occurred before the trooper began questioning relative to the drug discovery. We find no error in the trial court's refusal to suppress the verbal admissions.

■■ We turn now to the substantial evidence question. We have previously decided that one who has the keys to a car containing dangerous drugs and is, in fact, driving it, as the sole occupant has dominion and control over the "premises," and that such evidence is sufficient to support a finding of constructive possession. *State v. Potts*, 1 Wn. App. 614, 464 P.2d 742 (1969). In this case, defendant admitted that he had the ignition key and was driving the car in which illegal drugs were discovered. Defendant's conten-

tion that he did not have a key to the console compartment of the car does not alter the rule stated in *Potts*. It is merely an indication of his lack of knowledge of the presence of a drug in the car. The test of constructive possession is not whether one can conveniently obtain actual possession of the drugs, but whether one has dominion and control over the premises where the drugs happen to be.

It is well established that the state need not show that defendant intended to possess drugs or even knew of the existence of the drugs in order to make a prima facie case. *State v. Walcott*, 72 Wn.2d 959, 435 P.2d 994 (1967); *State v. Mantell*, 71 Wn.2d 768, 430 P.2d 980 (1967); *State v. Henker*, 50 Wn.2d 809, 314 P.2d 645 (1957).

Once the state establishes constructive possession, the burden shifts to defendant to explain his possession as unwitting, authorized by law, acquired in a lawful manner, or otherwise excusable. *State v. Morris*, 70 Wn.2d 27, 422 P.2d 27 (1966). Defendant did introduce evidence of unwitting possession, *i.e.*, he testified that he borrowed a friend's car without knowledge that illegal drugs were secreted in the console compartment. This testimony does not negate constructive possession, but instead relates solely to the defendant's affirmative defense. The state's evidence clearly contradicted defendant's testimony. Trooper Henson testified that defendant admitted not only knowledge but also use of the drugs found in the car. The resolution of this evidentiary conflict was clearly for the jury. We have reviewed the record and conclude that there is substantial evidence to support the jury's verdict.

■ Finally, defendant contends that he was denied a fair trial. Defendant argues that his trial counsel's failure to propose and the court's failure to give a circumstantial evidence instruction amounted to a lack of effective counsel. *State v. White*, 5 Wn. App. 283, 487 P.2d 243 (1971). We have reviewed the record and conclude that defendant was effectively represented. Nondirection on circumstantial evidence where no constitutional right has been violated

does not constitute reversible error. *State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972).

Affirmed.

ARMSTRONG and PETRIE, JJ., concur.