# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50386-7-II |
| Respondent, | |
| v. | |
| ROBERT JESSE HILL, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found Robert Jesse Hill guilty of three counts of third degree assault, one count of unlawful possession of a controlled substance, and one count of obstruction of a law enforcement officer.  Hill appeals, arguing that (1) his counsel was ineffective for failing to request a voluntary intoxication instruction, (2) there was insufficient evidence to convict for the controlled substance charge, and (3) certain cost provisions in the judgment and sentence are no longer authorized after enactment of Engrossed Substitute House Bill (ESHB) 1783.

In his statement of additional grounds (SAG) for review, Hill argues that (1) his counsel was ineffective for failing to request a lesser included offense of unlawful display of a weapon, and (2) his counsel was ineffective for failing to request a jury instruction on "dominion and control."

We hold that (1) Hill's counsel was not ineffective for failing to request a voluntary intoxication instruction, (2) there was sufficient evidence to convict for the controlled substance charge, and (3) the criminal filing fee and interest are no longer authorized, and the DNA (deoxyribonucleic acid) fee is discretionary.  Additionally, we hold that Hill has not raised

reversible error in his SAG. Consequently, we affirm Hill's convictions and remand to the trial

court to strike the criminal filing fee, the DNA fee, and interest accrual.

FACTS

I. BACKGROUND

Hill had a confrontation with a construction worker on a construction site. Later that day,

Hill drove back to the construction site and parked,[1] blocking a cement truck. Hill refused to

move his vehicle. Pierce County Sheriff's Deputies Charles Roberts, Emily Holznagel, and

Kevin Finnerty responded to calls regarding the dispute.

Deputy Roberts knocked on Hill's window, stating that he needed to speak with him.

Hill rolled down his window about two to three inches. Deputy Roberts instructed Hill that he

needed to step out of the vehicle. Hill refused, then put his vehicle in reverse and started to back

up. Deputy Roberts instructed him not to back up. Hill put his vehicle into park. Deputy

Roberts instructed him again that he needed to step out of the vehicle. Hill put the vehicle in

reverse and backed up again.

At this point, Deputy Roberts observed that Hill's speech was slurred and his eyes were

bloodshot. Deputy Roberts instructed Hill to get out of the vehicle so that deputies could

investigate whether Hill was intoxicated. Deputy Roberts slapped the window, and instructed

Hill to stop the vehicle and put it in park. Deputy Roberts instructed Hill to step out of the

---

[1] Hill makes two "clarifications" in his SAG. Hill states that the vehicle he was driving was registered to the trust "The Committee to Support the Blue Boy Brigade, I" during this incident, and not to his mother, as his opening brief states. SAG at 2 (citing Br. of Appellant at 20). Hill also states that the opening brief is incorrect when it said he was the "sole occupant" of the vehicle that day. SAG at 1. The vehicle's registered owner is irrelevant under the analysis below, and there is no evidence in the record demonstrating someone else was in the vehicle at the time of the incident. Therefore, Hill's "clarifications" do not change the analysis herein.

vehicle, or he would break the window and forcibly remove Hill. Hill refused, and backed up his vehicle for a third time. Deputy Finnerty then broke the driver's side window with his flashlight.

After Deputy Finnerty broke the driver's side window, Deputy Roberts opened the door to remove Hill from the vehicle. Hill grabbed a mace gun and pointed it at all three deputies. Deputy Roberts knocked the mace gun out of Hill's hand, and the deputies grabbed Hill and removed him from the vehicle.

The deputies then handcuffed Hill. While being searched for weapons, Hill slammed his head against the patrol vehicle twice. After Hill was put into a patrol vehicle, he continued to bang his head.

Hill's vehicle was taken to a sheriff precinct where Deputy Finnerty found the keys in the ignition. The key did not work to open Hill's trunk, and the police had to use force to open the trunk. During their search of the vehicle, deputies found an orange pill bottle "in a box under a box." Verbatim Report of Proceedins (VRP) (June 5, 2017) at 148. The box contained 86 pills of alprazolam.[2] Additionally, Deputy Roberts found "dozens and dozens of alcohol bottles" in the vehicle.

The State charged Hill with three counts of third degree assault, one count of unlawful possession of a controlled substance, one count of obstructing a law enforcement officer, and one count of driving under the influence (DUI) of alcohol. Before trial began, Hill pleaded guilty to driving under the influence. He went to trial on the remaining charges.

II. TRIAL

---

[2] Alprazolam is schedule IV controlled substance. RCW 69.50.210(b)(1). It is sold under the trade name Xanax. *State v. Zillyette*, 178 Wn.2d 153, 160, 307 P.3d 712 (2013).

Before trial, Hill made a motion in limine to exclude any photos of alcohol containers found in Hill's vehicle. The trial court granted the motion. At trial, the witnesses testified consistently with the above facts. Additionally, Deputy Roberts testified that he believed the vehicle was registered to Hill's mother based on his memory from seeing the registration.

Deputies Roberts and Finnerty testified that Hill's eyes were bloodshot, his speech was slurred, and his pupils appeared constricted. Deputy Finnerty testified that Hill smelled of intoxicants and he appeared disheveled. Although defense counsel did not object to any testimony regarding Hill's intoxication, counsel did state that testimony regarding the numerous alcohol bottles found in the car would be prejudicial to Hill.

The cement truck driver testified that when he approached Hill's vehicle to talk to him, Hill hissed at him and was not making any sense. A forensic scientist with the Washington State Patrol Crime Laboratory testified that the substance found in Hill's vehicle was alprazolam.

Hill also testified at trial. Hill stated that he blocked the cement truck so he could find information about the construction worker who he had an earlier confrontation with. He said it was his intention to have the police called to the construction site. Hill testified that it was not his intent to have the vehicle engine on, but that he just wanted to listen to the radio. He said that he believed the engine was off. Hill testified that he then fell asleep in the vehicle and when he woke up, one of the deputies slapped on his window and told him to get out of the car or "the window's going to be broken." VRP (June 7, 2017) at 400. Hill testified that he then immediately turned to take his seat belt off, and that is when the window broke. He stated he did not point the mace gun at the deputies

4

Defense counsel did not ask Hill about drinking or taking drugs. Before the State's cross-examination of Hill, defense counsel brought a motion to prevent the State from questioning Hill about anything relating to the controlled substance charge, citing *State v. Hart*, 180 Wn. App. 297, 320 P.3d 1109 (2014). Defense counsel's motion sought to prohibit the State from inquiring about ownership and title of the vehicle, and whether Hill was under the influence of pills. The court agreed that the State could not question Hill regarding any facts related to the controlled substance charge.

The trial court instructed the jury before closing arguments. One of the instructions defined assault as an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury. "Intent" was also defined in an instruction as a person "acting with the objective or purpose to accomplish a result that constitutes a crime." Clerk's Papers (CP) at 33. The trial court also gave the jury an instruction on "dominion and control." CP at 39. The instruction reads:

> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.
>
> In deciding whether the defendant had dominion and control over a substance, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the immediate ability to take actual possession of the substance, whether the defendant had the capacity to exclude others from possession of the substance, and whether the defendant had dominion and control over the premises where the substance was located. No single one of these factors necessarily controls your decision.

CP at 39.

Defense counsel did not request the following jury instructions: voluntary intoxication, dominion and control, or the lesser included offense of unlawful display of a weapon.

During closing arguments, defense counsel argued that the deputies lacked reasonable apprehension and imminent fear of bodily injury. Defense counsel stated that Hill's action of waving around the mace canister did not prove Hill's intent to assault the officers. Defense counsel stated that "there were five different versions of what happened," and when the deputies were reaching for the door when Hill was waving the mace spray, "there's not a lot of room left for anything to be pointed anywhere." VRP (June 7, 2017) at 461. Defense counsel stated that "[n]obody could give definitive increments of time." VRP (June 7, 2017) at 463. Defense counsel finished by arguing the inconsistencies in the testimonies give rise to doubt.

During deliberations, the jury asked the trial court six questions. The jury asked, among other things, what the drug, alprazolam, is used for and what its side effects are when it interacts with other substances, "such as alcohol or other mind alter[ing] drug." CP at 46. The jury also asked whether there was a "toxicology report (UA[(urine analysis)])." CP at 46. The trial court responded, "All of the evidence that you may consider has been presented to you," and "Please refer to your jury instructions." CP at 47.

The jury found Hill guilty as charged. The trial court sentenced Hill and imposed a $200 criminal filing fee, a $100 DNA fee, and interest. The court also signed an order of indigency at sentencing.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Hill argues that his counsel was ineffective for failing to request a voluntary intoxication jury instruction. Hill asserts that the jury's questions during deliberations showed that the jury "wanted to consider Hill's intoxication in reaching their verdict" and that counsel's failure to

6

request the instruction therefore prejudiced Hill. We hold that Hill's trial counsel was not ineffective for failing to request a voluntary intoxication instruction.

A.      *Legal Principles*

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Ineffective assistance of counsel is a two-prong inquiry. *Grier*, 171 Wn.2d at 32 (quoting *State v Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). To prevail on an ineffective assistance of counsel claim, a defendant must show that defense counsel's performance was deficient, and the deficient performance prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

"The threshold for the deficient performance prong is high, given the deference afforded to [the] decisions of defense counsel in the course of representation." *Grier*, 171 Wn.2d at 33. To prove deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 32. When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient. *Grier*, 171 Wn.2d at 33-34. Recently, our Supreme Court held that the record before this court must be sufficient for this court to determine what counsel's reasons for the decision were in order to evaluate whether counsel's reasons were legitimate. *State v. Linville*, 191 Wn.2d 513, 524-25,

423 P.3d 842 (2018).  If counsel's reasons for the challenged action are outside the record on appeal, the defendant must bring a separate collateral challenge.  *Linville*, 191 Wn.2d at 525-26.

B.      *Failure To Request a Voluntary Intoxication Instruction*

Hill argues that his counsel rendered ineffective assistance by failing to request a voluntary intoxication instruction.  We disagree.

To show that he received ineffective assistance of counsel based on counsel's failure to request a particular jury instruction, Hill must show that the trial court would have given a voluntary intoxication instruction had defense counsel requested it, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice.  *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 718, 327 P.3d 660 (2014).  In order for Hill to show that the trial court would have given a voluntary intoxication instruction had counsel requested it, he must present evidence that (1) one of the elements of the crime charged is a particular mental state, (2) there is substantial evidence that the defendant ingested an intoxicant, and (3) this activity affected his ability to acquire the required mental state.  *State v. Harris*, 122 Wn. App. 547, 552, 90 P.3d 1133 (2004).

Here, Hill hissed at the cement driver and was incoherent when speaking to him.  The deputies consistently testified that Hill's speech was slurred and Hill slammed his head both on the outside of the patrol vehicle and when inside the patrol vehicle.  Officer Roberts found "dozens and dozens" of alcohol bottles in Hill's vehicle.  VRP (June 6, 2017) at 204.  Additionally, Hill showed physical signs of intoxication, such as bloodshot eyes, disheveled appearance, and smelled of alcohol.

Assuming without deciding that Hill was entitled to a voluntary intoxication instruction, we hold that defense counsel was not deficient for failing to request the instruction because Hill cannot show on the record that counsel's decision was not tactical.

The record shows that counsel intentionally limited evidence of Hill's level of intoxication. Hill pleaded guilty to the DUI charge, which prevented the jury from hearing some of the evidence regarding his intoxication. And defense counsel sought a motion in limine to exclude any photos of alcohol containers found in the vehicle. During trial, his defense counsel affirmatively sought to exclude testimony regarding Hill's intoxication, successfully prohibiting the State from cross-examining him regarding the drugs found in Hill's vehicle. Additionally, during direct examination, defense counsel did not inquire into Hill's intoxication. Throughout the entirety of the trial, defense counsel avoided Hill's intoxication and instead attempted to cast doubt on the strength of the State's case.

Defense counsel's approach of avoiding Hill's intoxication was a legitimate trial strategy. That the strategy was ultimately unsuccessful does not impact our assessment of whether defense counsel's performance was deficient. *Grier*, 171 Wn.2d at 43. Hill has not met the high burden of proving that defense counsel's performance was deficient. Because Hill fails to prove deficient performance, we do not address the second prong of whether Hill was prejudiced. *Hendrickson*, 129 Wn.2d at 78.

## II. SUFFICIENCY OF THE EVIDENCE

Hill next argues that the State failed to prove that sufficient evidence supported his conviction for unlawful possession of a controlled substance. Specifically, Hill asserts that the State failed to prove that Hill had dominion and control over the alprazolam found in the vehicle.

Additionally, he contends that the car was not registered to him, the key that was in the ignition would not open the trunk, and there was no evidence that Hill was aware of the drugs in the car. We hold that sufficient evidence supported his conviction for unlawful possession of a controlled substance.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence. *Salinas*, 119 Wn.2d at 201. "We defer to the jury 'on 'issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.'" *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014) (quoting *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)). Furthermore, we consider direct and circumstantial evidence equally reliable in evaluating the sufficiency of the evidence. *Thomas*, 150 Wn.2d at 874.

Possession may be actual or constructive. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). Actual possession occurs when a defendant has physical custody of the item, and constructive possession occurs if the defendant has dominion and control over the item. *Jones*, 146 Wn.2d at 333. Dominion and control can be over "either the drugs or the premises on which the drugs were found." *State v. Callahan*, 77 Wn.2d 27, 31, 459 P.2d 400 (1969). Here, the case against Hill was based on constructive possession.

In reviewing claims of constructive possession, we examine whether, under the totality of the circumstances, the defendant exercised dominion and control over the contraband in question. *State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000). "Dominion and control

10

means that the object may be reduced to actual possession immediately." *Jones*, 146 Wn.2d at 333.

Mere proximity to the item by itself cannot establish possession; other facts must enable the trier of fact to infer dominion and control. *Turner*, 103 Wn. App. at 521. Such factors include ownership of the item or dominion and control over the premises. *Turner*, 103 Wn. App. at 522. An automobile may be considered premises for the purpose of determining whether the defendant exercised dominion and control over the premises where the narcotic drugs were found. *State v. Coahran*, 27 Wn. App. 664, 668-69, 620 P.2d 116 (1980). Further, an individual's sole occupancy of the vehicle and possession of the vehicle's keys sufficiently supports a finding that the defendant had dominion and control over the vehicle's contents. *State v. Potts*, 1 Wn. App. 614, 616, 464 P.2d 742 (1969). The fact that keys do not allow access to an area where drugs are found in a car does not alter the rule that one who has the keys to a car and is driving it as the sole occupant is sufficient to support a finding of constructive possession. *State v. Dodd*, 8 Wn. App. 269, 274-75, 505 P.2d 830 (1973).

Here, sufficient evidence shows that Hill had constructive possession of the alprazolam. Deputies found a bottle of alprazolam in the vehicle that Hill was driving. Hill, the sole occupant in the car at the time he was contacted by law enforcement, operated the vehicle in the presence of the deputies. Although Hill claims that the vehicle was not registered to him, he had the keys to the vehicle and drove the vehicle on the night of the incident. Thus, Hill's sole presence in the vehicle and possession of the keys demonstrates sufficient evidence that he had dominion and control over the alprazolam. *See Potts*, 1 Wn. App. at 616 (holding that an individual's sole occupancy of the vehicle and possession of the vehicle's keys sufficiently

supports a finding that the defendant had dominion and control over the vehicle's contents). This evidence is sufficient for a rational trier of fact to find beyond a reasonable doubt that Hill was in constructive possession of the controlled substance.[3]

### III. LEGAL FINANCIAL OBLIGATIONS

Relying on *Ramirez*, Hill argues that the DNA fee, criminal filing fee, and interest accrual that the trial court imposed on Hill are no longer authorized after the enactment of ESHB 1783.[4] The State concedes. We agree with Hill, and accept the State's concession.

Recent legislation prohibits trial courts from imposing discretionary LFOs, criminal filing fees, or interest accrual on the nonrestitution portions of LFOs on indigent defendants. RCW 10.01.160(3); RCW 36.18.020(h); RCW 10.82.090; *State v. Ramirez*, 191 Wn.2d 732, 746, 426 P.3d 714 (2018). Additionally, a DNA fee is mandatory "unless the state has previously

---

[3] Additionally, Hill argues that because the key would not open the trunk, Hill did not have "sole possession" of the car keys. Br. of Appellant at 21. The record does not show where the alprazolam was found, but even if it was found in the trunk, Hill's argument fails because whether a key can access all parts of a vehicle does not change the rule for constructive possession. *Dodd*, 8 Wn. App. at 274-75. Finally, although Hill argues that there was no evidence that he was aware of the drugs in the car, the State need not show that the defendant intended to possess drugs or even knew of the existence of the drugs in order to establish constructive possession. *Dodd*, 8 Wn. App. at 275. Hill did not assert an unwitting possession defense at trial. Consequently, both arguments fail to show that there was insufficient evidence to establish constructive possession.

[4] ESHB 1783 was codified on June 7, 2018, and amends certain RCWs related to LFOs. LAWS OF 2018, ch. 269, sec. 17. ESHB 1783 eliminates interest accrual on the nonrestitution portions of LFOs, establishes that the DNA database fee is no longer mandatory if the offender's DNA has been collected because of a prior conviction, and prohibits imposing a criminal filing fee on indigent defendants. RCW 43.43.7541; *State v. Ramirez*, 191 Wn.2d 732, 746-47, 426 P.3d 714 (2018).

collected the offender's DNA as a result of a prior conviction."[5]  RCW 43.43.7541; *Ramirez*, 191 Wn.2d at 747.  The new statute applies prospectively to cases that are on appeal.  *Ramirez*, 191 Wn.2d at 747.

Here, the trial court signed an order of indigency for Hill.  Because the trial court is prohibited from imposing a criminal filing fee or interest accrual on indigent defendants, the criminal filing fee and interest imposed on Hill are no longer authorized.  Thus, we remand to the trial court to strike the criminal filing fee and interest accrual.

Additionally, the State represents that Hill's DNA was previously collected and is on file with the Washington State Patrol Crime Lab.  Therefore, the DNA collection fee is no longer mandatory.  *Ramirez*, 191 Wn.2d at 747.  Because the DNA fee is no longer mandatory if the defendant's DNA has been previously collected, and because discretionary fees are not authorized in this case, we remand to the trial court to strike the DNA fee.

IV.  STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Hill asserts that his trial counsel was ineffective for failing to (1) request a lesser-included offense instruction for the third degree assault charge, and (2) provide a jury instruction for dominion and control.  We disagree.

A.     *Lesser Included Instruction*

Hill argues that his counsel rendered ineffective assistance by failing to request an instruction on the lesser included offense of unlawful display of a weapon for the third degree assault charge.  We disagree.

---

[5] The law does not include information on how the courts should determine whether the defendant's DNA has been "previously collected."

Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice. *Cross*, 180 Wn.2d at 718.

The threshold question here is whether Hill was entitled to the lesser included offense instruction. A defendant is entitled to a lesser included offense instruction if two criteria are met: "each of the elements of the lesser offense must be a necessary element of the offense charged" (legal prong), and "the evidence in the case must support an inference that the lesser crime was committed" (factual prong). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The factual prong of *Workman* is satisfied when, viewing the evidence in the light most favorable to the party requesting the instruction, "substantial evidence in the record supports a rational inference that the defendant committed only the lesser included or inferior degree offense to the exclusion of the greater offense." *State v. Fernandez-Medina*, 141 Wn.2d 448, 461, 6 P.3d 1150 (2000).

1. *Legal Prong*

A person is guilty of third degree assault if he or she "[a]ssaults a law enforcement officer . . . who was performing his or her official duties at the time of the assault." RCW 9A.36.031(1)(g). The criminal code does not define assault. *State v. Stevens*, 158 Wn.2d 304, 310-11, 143 P.3d 817 (2006). Therefore, we apply the common law definitions. *Stevens*, 158 Wn.2d at 310-11. A person commits assault when he or she intentionally puts another in apprehension and fear of bodily injury. *Stevens*, 158 Wn.2d at 311.

14

To convict a defendant of unlawful display of a weapon the State must prove that the defendant

> carr[ied], exhibit[ed], display[ed], or [drew] any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifest[ed] an intent to intimidate another or that warrant[ed] alarm for the safety of other persons.

RCW 9.41.270(1). The elements of unlawful display of a weapon are not necessary elements of third degree assault based on the assault of a law enforcement officer. It is possible to commit third degree assault by assaulting a law enforcement officer without carrying, exhibiting, displaying, or drawing a weapon apparently capable of producing bodily harm. Because each element of unlawful display of a weapon is not a necessary element of third degree assault, unlawful display of a weapon is not a lesser included offense of third degree assault. *Compare* RCW 9.41.270(1), *with* RCW 9A.36.021. Therefore, the legal prong of the *Workman* test is not satisfied. Because Hill was not entitled to an instruction on the lesser included offense of unlawful display of weapon, Hill cannot demonstrate that defense counsel rendered deficient performance, and Hill's claim fails.

B.     *Dominion and Control*

Hill also claims that his trial counsel was ineffective for failing to request a jury instruction on "dominion and control" as it related to his controlled substance charge. We disagree.

However, jury instruction 19 provides instruction on "dominion and control." Jury instruction 19 reads:

No. 50386-7-II

        Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.

        In deciding whether the defendant had dominion and control over a substance, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the immediate ability to take actual possession of the substance, whether the defendant had the capacity to exclude others from possession of the substance, and whether the defendant had dominion and control over the premises where the substance was located. No single one of these factors necessarily controls your decision.

CP at 39. Therefore, Hill's claim fails.

We affirm Hill's convictions, but remand to the trial court to strike the criminal filing fee, the DNA fee, and interest accrual.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, A.C.J.

_____
Sutton, J.

16